City of Norwich *v.* Breed.

---- —◦◦◀◆▶◦—◦——

CITY OF NORWICH *vs.* JOHN BREED.

An excavation was made by the defendant on his own land, a short distance from a sidewalk in a city street, and was left unguarded, he having removed a fence which had been standing between his land and the street. The night following a person passing along the sidewalk, got off the walk and fell in and was injured A general statute made it the duty of the city to protect the sidewalk by a railing where necessary, and the person injured recovered damages against the city for the injury. In a suit brought by the city to recover indemnity from the defendant, it was held,

1. That the liability of the defendant did not depend upon how near the excavation was to the sidewalk, but upon the question whether, in the circumstances, it rendered traveling upon the sidewalk dangerous. [One judge dissenting.]
2. That the defendant was liable on the ground of his personal connection with the wrongful acts, and that it was not necessary that he should have been in the occupancy of the land.
3. That it was not necessary, in consequence of the allegation in the declaration of a general duty on the part of the city to protect the sidewalk by a railing, to allege a particular duty on the part of the defendant to erect the railing in this instance, but that the general allegation of the defendant's negligence in leaving the excavation exposed, and the subjection of the city to damages in consequence of it, was sufficient.

ACTION on the case, to recover from the defendant the amount of a judgment which had been recovered against and paid by the city of Norwich, for an injury sustained by a person passing along a sidewalk in the city, by falling into an

excavation by the side of the street left open by the defendant on his own land.

The case was tried to the jury in the superior court, on the general issue, before *Dutton, J.*

On the trial it was proved and admitted that the defendant was the owner of a piece of land at the corner of Main and Church streets in the city of Norwich; that a short time previous to the injury alleged he had erected a large building called Breed Hall on this land, fronting on both streets; that he was the owner of a dwelling house, one end of which was attached to the east end of the Hall, and the other adjoined a lane called Church alley, running at right angles with Church street, the dwelling house standing back from Church street far enough to leave at the corner of Church street and Church alley a yard about forty feet square; and that one Willoughby had erected the hall on a special contract, and was at the time repairing the dwelling house on a general employment. The plaintiffs offered testimony to show that Willoughby was requested by the defendant to cause the ground in the yard to be excavated, so that there would be a gradual descent from the hall and dwelling house to the outside of the yard to carry off the water; that he thereupon, as the agent of the defendant, employed one Noyes to do the work; that Noyes procured some laborers, who, on the 26th, 27th and 28th days of March, 1860, made an excavation two or three feet deep near the south line of Church street; that a board fence which had stood on the south line of Church street was removed, and that the workmen left the excavation without any protection to travelers on Church street, and without any light; that a meeting was held in the hall on the 28th day of March in the evening, and that one Sykes, after attending the meeting, was passing on the sidewalk in Church street, near the excavation, when it was very dark, and missing his way, without any want of ordinary care on his part, fell into the excavation and was severely injured; and that Sykes afterwards sued the city of Norwich for the injury and recovered the amount alleged in the declaration.

The defendant claimed to have shown that the excavation

was made either by Willoughby or Noyes, under a special agreement; also that Noyes was at the time a street commissioner of the city of Norwich, and that it was his duty as such to see that the streets of Norwich were in a proper condition; also that the excavation was about four feet south of the south line of Church street, and wholly on the defendant's own land; also that he had obtained a license from the mayor of Norwich to use the south half of Church street while erecting the hall. He also offered evidence to show that he had no actual knowledge of the condition in which the excavation was left. No evidence was offered to show that Noyes assisted personally in making the excavation after the noon of the day before which it was finished, or that he had any knowledge that the excavation was left without protection. The defendant requested the court to charge the jury that if the excavation was made, either by Willoughby or Noyes, under a special contract, whether payment was to be made in a gross sum or by the day, he would not be liable; also, that if they should find that the work was done under the superintendence of Noyes, he being then street commissioner, or if the excavation was wholly on his own land, at any distance from the line of the street, or if he had the license claimed from the mayor of the city, or if he did not personally employ the laborers, and had no actual knowledge of the dangerous condition of the excavation, the plaintiffs could not recover. He further requested the court to charge the jury that inasmuch as the record offered in evidence by the plaintiffs showed that they were liable for the injury, they must have materially contributed to it, and could not recover.

The court charged the jury that if the excavation was made by others than the defendant, yet if it was known to him that it was in a dangerous condition in season to have protected it before the injury, he would, so far as that point was concerned, be liable; that if it was made and left unprotected by him, or by persons in his employment, he would also be liable; but that if it was done under a special contract, by which the control over the work was taken from him, he would not, so far as that point was concerned, be liable; that it would make no

difference whether the excavation was wholly on the land of the defendant or not, if it was left by him in a condition dangerous to passengers on the adjoining street who were exercising reasonable care ; that the fact that Noyes was at the time street commissioner would not affect the liability of the defendant, unless the former was acting in the employment of the laborers as street commissioner, and that if he was the plaintiffs could not recover; that the license of the mayor would not justify the defendant under the circumstances if otherwise liable ; and that if the city had been rendered liable for an injury caused by the negligence of the defendant, and the liability of the city was owing only to not having protected the public with sufficient care against the danger which the defendant had been the author of, the plaintiffs were entitled to recover of the defendant the amount of the former judgment and interest.

The jury having returned a verdict for the plaintiffs, the defendant moved for a new trial for errors in the charge. He also moved in arrest of judgment for the insufficiency of the declaration, which motion was reserved for the advice of this court with the other. The points made upon this motion will be sufficiently understood from the opinion, without setting out the declaration.

*Wait* and *Pratt*, in support of the motion.

1. The question as to the liability of the defendant was not properly left to the jury. The court instructed them that it would make no difference as to the liability of the owner of land for an excavation made by him, whether the excavation was wholly on his own land or not, " if left by him in a condition dangerous to passengers on the adjoining street who were exercising reasonable care." The rule laid down by the authorities is different, and can not be better stated than in the words of the judge in a recent and similar English case :—
" We think that the proper and true test of legal liability is, whether the excavation be substantially adjoining the way ; and it would be very dangerous if it were otherwise,—if, in every case, it were to be left as a fact to the jury, whether the

excavation were sufficiently near to the highway to be dangerous." *Hardcastle* v. *South Yorkshire Railway & River Dun Co.*, 4 Hurlst. & Norm., 67. The cases in Massachusetts go much farther, and decide that unless the excavation actually encroaches upon the highway the owner of the land is not liable. *Howland* v. *Vincent*, 10 Met., 371. The English courts, after the fullest discussion, have adopted the rule that, although the excavation may be at an appreciable distance from the highway, still, if it substantially adjoins it, so that a person walking upon the highway might by a sudden false step be precipitated into it, then the owner or occupier of the land is liable ; but if the person receiving the injury has to trespass upon the adjoining ground before he falls into the excavation, then it is his misfortune and he must bear it. In other words, the excavation must be near enough to be dangerous to persons who are upon the highway, and not to those who miss their way, and wander from the highway. *Hounsell* v. *Smyth*, 7 Com. Bench, *N. S.*, 729.

2. The plaintiffs can not recover because they have been guilty of actual negligence themselves. The principle is well established that an action can not be maintained by one of several joint wrong doers against another for indemnity. *Broom's Legal Maxims*, 325. The wrongful act complained of in this case, is the suffering the excavation to be without any sufficient guard. It is not the digging of the excavation, for that the defendant had a perfect right to do, as well as to remove the fence, which was his own property. It is simply the omission to erect the barrier. If the plaintiffs were equally negligent with the defendant, they certainly can not, without violation of all principle, be allowed to recover an indemnity from him. The only cases in which this indemnity has been recovered are those in which, to use the language of Hinman, J., " the wrong is rather technical than real as respects the town." *Hamden* v. *New Haven & Northampton Co.*, 27 Conn., 158. The fair implication in all the cases decided is, that if the town had been guilty of actual negligence, then the principle should apply that there should be no contribution among joint wrong doers. *Lowell* v. *Boston &*

*Lowell R. R. Co.*, 23 Pick., 24. *Duxbury* v. *Vermont Central R. R. Co.*, 26 Verm., 751. The defendant introduced evidence of the fact that Noyes was street commissioner, and that the mayor of the city had given a license to the defendant to use half the street in erecting the hall, in order to show on the part of the plaintiffs such a knowledge of the state of the premises as required them to guard the highway. Neglect, after actual knowledge by the officers of the corporation, is a real and not a technical negligence; but the court charged the jury that "the fact that Noyes was at the time street commissioner would not affect the liability of the defendant, unless he was acting in the employment of the laborers as street commissioner." That the court below should make this fact the test of liability was clearly erroneous. It is of no consequence who did the work, except so far as it tends to charge the one party or the other with negligence. It was for the neglect to guard the hole that damages were sought and recovered against the city, and for which the city seeks indemnity. So that the true test of the liability of the defendant to indemnify the city, was, did or did not the city through its officers know of the existence of this defect, and did not they, as well as the defendant, neglect to guard against it. If they did, then the plaintiffs can not recover.

3. The declaration is insufficient. 1st. In not alleging the occupation of the premises by the defendant. It is not enough to allege that he was the owner of the premises. It is well settled that the owner of land is not liable for damages resulting from nuisances erected on his land, merely by virtue of his ownership. It must be alleged and proved that the premises were in the occupancy, or were under the control, of the person sought to be charged with liability. *Hilliard* v. *Richardson*, 3 Gray, 350. *Blake* v. *Ferris*, 1 Selden, 48. *Coupland* v. *Hardingham*, 3 Camp., 398. *Lowell* v. *Spaulding*, 4 Cush., 277. 2nd. The declaration alleges the duty to erect this railing to be in the plaintiffs, and the breach of the duty in the defendant, without alleging any duty whatever in the latter to erect the fence. While the allegation of a private duty has been held to be immaterial and not traversable, it is

different with a duty owed toward the public. Broom's Comm., 661. 3d. Even if the allegation of duty is not necessary, still the declaration does not state facts sufficient to imply any duty on the part of the defendant to erect or maintain any railing. The facts as set forth imply a duty on the part of the corporation to erect and maintain a sufficient railing. It makes no difference whether the street became " so raised above the adjoining ground as to endanger the safety of travelers " by the act of the defendant, or was so by nature. In either case the statute has made it the imperative duty of the corporation to erect and maintain the fence. To take the duty from the corporation and impose it upon the individual would be a virtual repeal of the statute, and would impose new duties upon the owners of land adjoining the highway.

*Halsey* and *Crosby*, contra.

1. The court properly charged the jury that if the excavation was made and left unprotected by the defendant, or by persons in his employment, he was liable. The persons employed did not stand in the relation of contractors to the defendant. They were simply his servants, and under his direction and control. Their acts were his acts. The excavation they were making on his premises at his request was so near the street as to endanger the safety of travelers, and their neglect to put up suitable barriers was his neglect, and the jury have so found. The maxim, *respondeat superior*, applies to the defendant. *Stone* v. *Codman*, 15 Pick., 297. *Earle* v. *Hall*, 2 Met., 353, 357, 358. *Hilliard* v. *Richardson*, 3 Gray, 349, 354, 361. *Quarman* v. *Burnett*, 6 Mees. & Wels., 499. The fact therefore of the defendant's having no actual knowledge that the excavation was left without protection, does not free him from liability. " *Qui facit per alium facit per se.*"

2. The fact that the excavation was wholly on the land of the defendant did not relieve him from the responsibility of properly guarding it, if it endangered public travel. *Birge* v. *Gardner*, 19 Conn., 511. The doctrine laid down in the case of *Howland* v. *Vincent*, 10 Met., 371, is not recognized

in this state. The true principle in such cases is, that if the excavation endangered public travel, and was made by the defendant, he is liable. "*Sic utere tuo ut alienum non lædas.*" *Coupland* v. *Hardingham*, 3 Camp., 398.

3. The street was rendered dangerous in consequence of Breed's neglecting to put the premises in their former safe condition after the excavation was made, and the wrong is rather technical than real as respects the city. *Hamden* v. *New Haven & Northampton Co.*, 27 Conn., 167. And therefore the principle of *in pari delicto* has no application to the case. *City of Lowell* v. *Short*, 4 Cush., 275. *Lowell* v. *Boston & Lowell R. R. Co.*, 23 Pick., 24. The city therefore, having been held liable for a merely constructive wrong, has its remedy over against the actual wrong-doer. *Newbury* v. *Conn. & Pass. River R. R. Co.*. 25 Verm., 377. *Currier* v. *Lowell*, 16 Pick., 170. *Lowell* v. *Boston & Lowell R. R. Co.*, supra. *Hilliard* v. *Richardson*, 3 Gray, 353. *Hamden* v. *New Haven & Northampton Co.*, supra. *City of Lowell* v. *Short*, supra.

4. The license from the mayor merely exempted the defendant for the time being from the operation of the city by-laws in regard to depositing lumber in the streets for building purposes, and does not justify him if he is otherwise liable. Charter and By-laws of Norwich, (1855,) p. 72, sec. 5. But the defendant in making the excavation was not exercising any right under the license. He was digging on his own land, which he could do without a license from the mayor.

5. Noyes, though street commissioner at the time, was not acting in his official capacity. He was engaged in excavating the ground for the defendant, as Willoughby had been directed by the defendant to have it done. He commenced work on the premises with the other laborers on the 26th, working there till noon of the 27th, and was not there again either on that or the following day. He had no knowledge that the excavation was left without protection. Willoughby, the agent of the defendant, was there in charge of the premises after Noyes left, and the laborers were there under Willough-

by's direction. The defendant alone must be held to be the party responsible.

6. The defendant's motion in arrest of judgment should be denied. It was not necessary to allege that the defendant was in possession of the premises, or even that he was the owner, for the wrongful acts complained of could all have been done without his either being the owner or in possession ; nor is it necessary to allege that it was the duty of the defendant to erect or maintain a sufficient railing at the place exposed. The declaration alleges every fact that is material, and is supported by the pleadings in similar cases. *Lowell v. Boston & Lowell R. R. Co.*, supra. *City of Lowell v. Short*, supra.

SANFORD, J. Under the defendant's motion for a new trial, two questions are presented for our determination.

First, it is claimed that the judge should have charged the jury that, in order to justify a verdict for the plaintiffs, they must find not only that the excavation on the defendant's land was left by him in a condition dangerous to passengers on the adjoining street who were exercising ordinary care, but also that the excavation was substantially adjoining the highway, so that a person actually upon the highway might be precipitated into it.

In regard to this objection we may remark, in the first place, that the charge which the defendant in fact requested the court to give, was that if the excavation was wholly on the defendant's land, *at any distance from the line of the street*, the plaintiffs could not recover. The difference between the charge requested and the principle contended for is manifest, but we do not care to dwell upon it, because we think that in making the defendant's liability to depend upon the dangerous condition in which the excavation was left by the defendant, rather than upon its distance from the street, the judge adopted the true criterion.

Our statute (Rev. Stat., tit. 24, sec. 7,) made it the duty of the city to erect and maintain a good and sufficient fence or railing on the side of the street, if it was " so raised above

the adjoining ground as to endanger the safety of travelers ; "
and made it liable to the payment of just damages to any one
who should suffer in person or property by reason of the want
of such railing. In a contest between the party injured and
the city therefore, it would seem impossible to maintain the
principle now contended for by the defendant. By the terms
of the statute the duty of the city, and its consequent liability
for neglect, are made to depend entirely upon the question of
danger; and it is obvious that that question can seldom if
ever be resolved by the consideration of the distance between
the street and the excavation alone. Distance is one and but
one of the elements which enter into the calculation. Trav-
elers in the night time need, and the intention of the legisla-
ture was to give them, the protection of a railing against
actual, existing danger, whether arising from a pit several
feet distant from the line of way, or a few inches only. In
both cases the danger, if not equal in degree, will be almost
always equally apparent. And whether danger exists in the
particular case or not must be a question of fact, depending
upon all of the surrounding circumstances, and one which the
jury only can decide.

And as the dangerous character rather than the exact loca-
tion of the excavation determined the duty and consequent
liability of the city in regard to it, so the duties and liabilities
of the defendant in this respect must be determined by the
same criterion. His right to make the excavation was unde-
niable, and was not denied ; but he was bound to exercis that
right with a due regard to the co-existing rights of th city
and of travelers on the street. *Sic utere tuo ut alienum non*
*lædas*, is a maxim as universal in application, as it is wise and
just in principle.

The defendant had a right to make the excavation, and, if
the fence was his, he had a right to remove that also; but hav-
ing removed the fence and made the excavation, he had no
right to leave the pit unguarded, until time and opportunity
had been afforded for the city to assume and perform the duty
thus originated and cast upon it by the defendant's act.
Travelers on the street were at all times entitled to, and had

City of Norwich *v.* Breed.

a right to expect, because the law required it, adequate protection against an excavation by reason of which the street became raised above the adjoining ground so as to endanger the travel upon it. The defendant's liability did not arise from the act of making the excavation, for that he had a right to make. Nor could it depend entirely upon the distance between the excavation and the street, for he had an abstract right to make it any where within the limits of his close ; but a due regard for the safety of travelers on the street required that, until the city could furnish such protection as the defendant's acts thus rendered necessary, he should himself discharge that duty. But he neglected it. He left the excavation altogether unguarded and unadvertised, in a condition dangerous to passengers on the adjoining street, and hence his just responsibility for the consequences of that neglect.

Whether the excavation could, with a due regard to the rights of passengers on the street, be left unguarded, or could not, depended upon the question whether, being unguarded, it endangered the travel or not. If it did not, no matter how near it was to the line of way. If it did, no matter how far it was removed.

We think the question of the defendant's liability in this respect was placed upon the true ground by the judge's charge.

In the discussion of this question it is to be taken as conceded, that, before the excavation in question, the street at that place was not so raised above the adjoining ground as to endanger the passage of travelers, or, if it was, that travelers were adequately protected by the board fence which until that time stood upon the line between the street and the defendant's land, so that up to that time the city had been in no default in regard to a fence or railing there. Then the defendant removed the fence, and made the excavation, and left it quite unguarded from the moment it was made. And the night after it was so made and left, the accident occurred. And thus the defendant's negligence was the immediate cause of the accident and injury for which the plaintiffs were compelled to make compensation.

The case of *Birge* v. *Gardner*, 19 Conn., 511, was analogous to the case now before us. In that case the defendant erected a heavy gate on his own land, adjoining a lane through which the plaintiff and other children were accustomed to pass from their residence to the highway. The plaintiff, a child of six or seven years of age, playing in the lane near the gate, put his hands on the gate and shook it, whereupon it fell and injured him. The plaintiff in his declaration charged the defendant with negligence in leaving his gate inadequately fastened up, and he recovered; the only question made in this court being, whether the plaintiff himself was chargeable with such misconduct in shaking the gate as precluded his recovery; the culpable negligence of the defendant, and his consequent liability unless relieved from it by the co-operating misconduct of the plaintiff, being conceded or not denied.

In the case of *The Inhabitants of Lowell* v. *Boston & Lowell R. R. Co.*, 23 Pick., 24, a railroad company, authorized by its charter, made a deep cut across a highway, and erected barriers to prevent passengers on the way from falling into it; but having occasion to use the way they removed the barriers, and left them off while their work was suspended for the night. Two passengers fell into the cut, and for their injuries thus occasioned they sued, and recovered compensation from the town. Then the town brought this action for indemnity, and the court held it entitled to recover, although it was conceded that the defendants had a right to make the cut, and were not bound to erect the barriers, provided they gave reasonable notice of their intended operations to the officers of the town, and that they had also a right to remove the barriers, (though they had been approved and adopted by the town,) but that they were bound to replace them when their work was suspended for the night. " This," says Mr. Justice Wilde, " was imperatively required by a due regard to public safety, otherwise an accident might happen before the town had notice, actual or constructive, and no one would be responsible for the damages. * * Corporations as well as individuals are bound so to exercise their rights as not to injure others. The

principle *sic utere tuo ut alienum non lædas,* is of universal application."

The cases cited by the defendant's counsel are clearly distinguishable from the one before us.   That of *Howland* v. *Vincent,* 10 Met., 371, was determined upon the ground that no actionable negligence could be imputed to the defendant. He had excavated his land up to within about six inches of the line of the street, and it had remained in that condition for several days before the accident, with the knowledge of the chairman of the board of selectmen and of the town surveyor of highways, the latter having charge of the highways, and having been in fact employed by the defendant to replace the flagging on the sidewalk and put the premises in order.   Hubbard, J., in giving the opinion of the court, said, that the only question was, whether the defendant had been guilty of such negligence as to expose him to the plaintiff's demand ; that there was no law which required him to fence the premises in the situation in which they then were, and that he did not appear to have been guilty of negligence.   Whether the town would or would not be liable the court in terms declined to express any opinion.

Now if we are right in supposing that, by the statutes of Massachusetts or otherwise, it was the duty of the town to keep the highway in such condition that it might be used by passengers at all times with comfort and security, it would seem to follow that in suffering such an excavation, within six inches of the line of the street, in a populous town, to remain unguarded for several days, the proper officers of the town having knowledge of its existence and condition, the town was guilty of neglect.   Indeed, such an unguarded excavation would seem to be a public nuisance to the way, which it was the duty of the town authorities to abate.   Angell on Highways, § 225. And in either aspect the plaintiff, being (as it was agreed) guilty of no negligence, would seem to be entitled to compensation for his injuries from the town for its manifest neglect.   In that case, as in the case at bar, the passenger was entitled to protection, and had a right to expect it because the law required it ; and he seems therefore justly entitled to compensation

from some one for injuries occasioned by the want of such protection. As between the defendant and the corporation, their respective duties and consequent liabilities were rather successive than co-existent. The defendant was bound to provide such immediate protection as his own acts rendered necessary, but only until time and opportunity had been afforded for the corporation to assume and perform that duty in his stead.

In the case cited several days elapsed, after the excavation and after the town officers had received notice of its existence, before the accident occurred. The duty therefore which at first rested upon the party making the excavation to provide protection against the danger he had thus created, had shifted from the defendant to the town before the accident, and thus the defendant had become exonerated from his original responsibility. But in the case at bar the accident occurred the night after the making of the excavation, and before the officers of the city could be presumed to have notice of its existence, or had in fact any opportunity to erect the fence or railing which the safety of passengers required.

In *Hardcastle* v. *The South Yorkshire Railway Co.,* 4 Hurlst. & Norm., 67, the defendants made a reservoir, near to, but not adjoining a public highway, and omitted to inclose it from the way. The plaintiff's intestate by accident strayed from the way in the night, and falling into the reservoir was drowned. There the defendants had a right to make the reservoir, and no law required that they should fence it in, or required any person or corporation to erect a fence or barrier along the way to prevent travelers from straying off from it. The deceased was bound to know the law, and therefore had no right to expect such protection, and voluntarily assumed the risk of traveling in the dark without it. So that, in reference to his rights, the defendants were chargeable with no wrong and no neglect.

*Hounsel* v. *Smyth,* 7 Com. Bench, *N. S.,* 729, was a case of the same character, with this element in addition, that the plaintiff went off from the public road and upon the defendant's land intentionally, and not by accident.

In these cases it was conceded that if the reservoir in the former, and the quarry in the latter, had been so near the line of way that a traveler on the way might have fallen or been thrown therefrom directly into such reservoir or quarry, they would have constituted public nuisances, and the makers of them would have been responsible accordingly.

Under our statute an excavation of such character and dimensions and so near to a highway as to endanger the passage of travelers, being unguarded, becomes a public nuisance, whether it adjoins the way or not, because it in fact endangers passengers on such way, and then it is the duty of the public to provide for travelers adequate security against such danger, by the erection of a fence or railing between the excavation and the way. And thus the nuisance is in effect abated.

While then we reject the rigid test of liability propounded by the English judges, it will be perceived that the difference between us arises out of the operation of our statute, rather than from any difference of opinion in relation to the principles of the common law applicable in cases of this kind.

Secondly. The defendant in this court contends, that notice to Noyes, the street commissioner, of the existence and condition of the excavation, was notice to the city, and that the city thus having notice through Noyes of such excavation, was by its own negligence in relation to it precluded from recovering against the defendant. And he claims a new trial because the superior court omitted to charge the jury as he requested—that if they should find that the work of making the excavation was done by, or under the superintendence of Noyes, he being then street commissioner, the plaintiffs could not recover. It is a sufficient answer to this claim to say, that the motion expressly states that " no evidence was offered to show that Noyes assisted in making said excavation personally after the noon of the day before which it was finished, or *that he had any knowledge that said excavation was left without protection;*" so that the point could not be made upon any evidence before the jury, and for that, if for no other reason, the defendant was not entitled to the charge requested.

Under the motion in arrest, the defendant claims that the declaration is insufficient.

First, because it is not alleged therein that the premises in which the excavation was made were in the defendant's occupation. But the plaintiffs' right to indemnity from the defendant was in no way dependent upon the defendant's occupancy of the land. An entire stranger, one having no interest in the land and claiming none, by removing the fence, making the excavation, and leaving it as the defendant did, would have incurred the same liability as if he had been the occupier and owner both. In this declaration the defendant is called upon to answer for his own misconduct, not for the misconduct of another. He is charged with the consequences resulting from the existence of the excavation because he made the excavation and left it unguarded, not because he owned or occupied the land.

The cases cited by the defendant's counsel on this point seem inapplicable. In *Hilliard* v. *Richardson*, 3 Gray, 350, a carpenter had undertaken to alter and repair a house on the defendant's land and furnish all the materials for a price agreed upon. He employed a teamster to draw the lumber, and the latter left it in the street. The defendant had no rightful control over the lumber and assumed none. The court held that the teamster was the servant or employee of the carpenter, not of the defendant, and that the latter was not liable. *Blake* v. *Ferris*, 1 Seld., 48, was a case of the same character, and determined by the application of the same principles. In the case of *Lowell* v. *Spaulding*, 4 Cush., 277, there was a cellarway under the sidewalk, into a house owned by the defendant but occupied by his tenants. The door covering the cellarway was out of repair, and a passenger on the sidewalk was injured in consequence. The court held that, in the absence of any agreement between the landlord and the tenants, and as between the latter and the public, it was the duty of the tenants to repair, and that the landlord was not responsible for their neglect. And in *Coupland* v. *Hardingham*, 3 Camp., 398, which was an action for an injury occasioned by the want of a railing between the street and an area in front of the

defendant's house, the defense set up was that the premises were in the same condition when the defendant took possession and long before. Lord Ellenborough held that the antiquity of the nuisance was no justification for its continuance ; that it was the duty of the occupier of the house to guard against the danger to which the public was exposed, and that he was liable for the consequences of having neglected to do so in the same manner as if he himself had originated the nuisance. We have no occasion to question the correctness of any of these decisions, but we think they have little if any bearing upon the question now before us.

Lastly. The declaration is claimed to be insufficient because it is said that it is not alledged that it was the duty of the defendant to erect a railing, and that no facts are stated from which such duty is inferable. But the plaintiffs' claim was that by the removal of the fence the excavation became dangerous to passengers on the street, and imposed a new duty upon the city to erect a railing at that place, and that until the city could perform that duty the defendant could not leave the excavation unguarded without a culpable disregard of the public rights and the security of travelers on the street. And this claim we think is set forth in the declaration in appropriate language and with all necessary allegations.

We think the declaration is sufficient.

In this opinion HINMAN, C. J., concurred. BUTLER, J., dissented upon the principal point in the case. DUTTON, J., having tried the case in the court below, did not sit.