DANIEL BECK, APPELLANT, *v.* ELMIRA CARTER AND JACOB C. EDWARDS, EXECUTORS, ETC., OF JOSEPH CARTER, DECEASED, RESPONDENTS.

*Highway — boundaries of — duty of adjoining owner to establish — liability for excavations near.*

If a house or store is built a few feet from the margin of a street or highway, and no fence is erected along or near the margin, persons traveling along the highway are at liberty to assume that the building is on the margin of the street, and that they may lawfully travel over the whole space thus apparently set apart for public use, and the owner of the adjoining land is liable to a traveler who, without fault on his part, falls into an excavation negligently made by such owner in the vicinity of the highway.

*Cleveland* v. *Cleveland* (12 Wend., 172) followed; *Binks* v. *South Yorkshire R. R. Co.* (113 E. C. L., 244) and *Howland* v. *Vincent* (10 Met., 371) disapproved.

How far from the margin of the highway the adjoining owner may make an excavation, without being liable to persons who may fall into it, is to be determined by the jury in each case, having regard to the knowledge of the traveler, the width of the highway, its surroundings and the mode of its use.

APPEAL from an order made at the Special Term, granting a motion for a new trial, made upon a case and exceptions.

In November, 1872, the plaintiff was passing along Exchange street, or alley, in the village of Bath, in the county of Steuben, from his shop to his boarding-house, and, on his way, he passed over the rear of a lot owned · by defendant, on which he had been erecting a building, having openings in front of the cellar windows to admit light; they were left uncovered, and he fell in and injured himself; and he brings this action against the defendant to recover the damages sustained by his fall; charging it to have resulted from the negligence of the defendant.

Franklin street, or alley, was laid out by the owners of land over

which it passes, over twenty years before the injury sustained by the defendant; and, although never recorded as a public street or highway, it has been used during all that time by persons with teams, and by persons on foot, at pleasure.

This street or alley extends from Steuben street on the south to Buell street on the north. At its junction with Steuben street it is fifteen feet wide; at a point a few feet north, it widens six and one-half feet; and at a point a little further north, it widens seven and one-half feet; but opposite the defendant's building it is thirty feet wide. The west wall of defendant's building is from five to seven feet from the east margin of Exchange street, or alley.

At the time of the injury, there was a pile of stones on the west side of Exchange, in front of defendant's building, and the middle of the street was muddy, so that foot passengers traveled near to defendant's building.

It was about eight P. M., that plaintiff started to go from his shop to the hotel where he boarded. It was quite dark, and looking like rain; as he came to defendant's building, an omnibus, owned by one of the hotels, turned from Buell street into Exchange street, to go to the shed where it was kept when not in use. It went very near defendant's building, so that plaintiff was compelled, in order to avoid being struck by it, to approach near defendant's building, and, in doing so, fell into the uncovered opening left to admit light to the basement, as above stated. These openings had been covered by planks; these planks had been removed and boards put in their places; and, on the evening in question, the boards also had been removed.

There was nothing to indicate to travelers the true boundary of the street. The wall of defendant's building, on the east side of the street, and the remains of a cellar wall on the opposite side, were all the guides or landmarks travelers had to ascertain the boundaries of the street. The court charged that the question, whether the precise *locus* of the injury was within the bounds of the thoroughfare, or within the boundary of defendant's lot, was not important, except so far as it bore on the question of defendant's negligence in leaving the area open. He further charged them that a person passing through an alley of that width cannot be required, and he is not to be expected, to know where the lines are. If he exercises ordinary

prudence to keep within the lines, as marked by ostensible boundaries, that is all that can be required of him. It cannot be required of a man, before he passes through a thoroughfare, to call a surveyor and find out where its legal boundaries are. He may take the ostensible boundaries, and the reasonable indications where the boundaries are. If there had been a sidewalk along there, of brick, stone or plank, or any other substitute, the east edge of that sidewalk would have been the boundary of that alley. But there was nothing of that kind. He further charged them that plaintiff was not bound to know precisely where the legal east line of the alley was; and it would, according to the proof, have been quite impossible for him to obtain such knowledge, if he made use of diligence to do so.

He further charged that the rule of law is, that a person is liable for an accident caused by an excavation upon his own land, so situate that a person lawfully using the highway, and using ordinary caution, falls into the excavation; that is, if the excavation is situated so near the highway that a person lawfully using it, and using ordinary caution, falls into it, that excavation, thus made, is a public nuisance. If the excavation in question was on the highway, or so near that a person exercising ordinary and reasonable care for his own safety was liable to fall into it, the defendant is liable for having it there, unless it was protected in such manner as to save the passers by from falling into it. It makes no sort of difference whether the excavation was seven, nine or ten feet from the originally established bounds of the thoroughfare; if it was so situated that a person lawfully using the thoroughfare, and in a reasonable manner, was liable to fall into it, the defendant was liable.

The defendant's counsel excepted to the parts of the charge above quoted. The jury found a verdict for the plaintiff of $351.

The defendant's counsel moved, on a case and exceptions, at Special Term, for a new trial. The motion was granted, and from the order granting it the plaintiff appealed to this court.

*W. B. Ruggles,* for the appellant.

*William M. Nichols,* for the respondent.

MULLIN, P. J.:

The new trial was granted because of error in the charge of the judge in submitting the case to the jury. The alleged error is, in charging that a person passing through Exchange street is not to be expected to know where the lines are. He may take the ostensible boundaries and the reasonable indications where these boundaries are. That it made no difference whether the excavation was seven, nine or ten feet from the originally established bounds of the thorough-fare, if it was so situated that a person lawfully using it, and in a reasonable manner, was liable to fall into it, the defendant was liable.

With all deference to the opinion of my learned brother who granted the new trial, I think he was wrong and the judge's charge was right, so far as the propositions above stated are concerned.

The general rule is, that an owner of land is not bound to inclose it in a fence, unless required to do so by some law of the State, and every entry on his land is a trespass for which he is entitled to damage. But this rule is not without exceptions. If a highway becomes foundrous the traveler may pull down fences and pass over the land of an adjoining owner, until he passes the foundrous part, then he must return into the highway.

So, also, when lands adjoining a public highway remain unin-closed, they are considered as dedicated to the public use, and no action will lie by the owner against any person traveling over them. (*Cleveland* v. *Cleveland*, 12 Wend., 172.)

NELSON, J., delivering the opinion of the court, says: Even if the road had been proved to have been laid out two rods wide, and a few feet belonging to the plaintiff lay between the road and the fence, as it has always been left in common with the road, and thereby apparently devoted to the public use, any person would be justified in using it in that way. The fair inference to be drawn from its situation thus acquiesced in by the owner, is that it has been abandoned to the public. Any other construction would con-vert it into a clap-trap to catch trespassers.

I do not find that this case has ever been overruled or questioned, and, assuming it to lay down the law correctly, let us proceed and apply it to the case before us.

If a house or store is built a few feet from the margin of the

street or highway, and no fence is erected along or near the margin, persons are at liberty to assume that the building is on the margin of the street, and that they may lawfully travel over the whole space thus apparently set apart for public use by the owners of the land.

The law in England and in Massachusetts is, that the traveler must, at his peril, keep within the limits of the highway as laid out or dedicated to the public, and if he passes over the boundary and is injured by falling into an excavation made by the owner at such a distance from the margin of the street, that a person who slips or becomes dizzy, or whose horse shies, would not fall into it, he is without redress, although there is nothing to indicate where the boundary of the street is. (*Binks* v. *South Yorkshire Railway Co.*, 113 E. C. L., 244, and cases cited; *Howland* v. *Vincent*, 10 Metc., 371.)

The principle of these cases is so in conflict with *Cleveland* v. *Cleveland* (*supra*), that it must be deemed to be repudiated as both unreasonable, oppressive and unjust.

In the opinion of the Court of Appeals in the case of *Nicholson* v. *Erie Railway Co.* (41 N. Y., 525), the case of *Hounsell* v. *Smyth* (reported in 97 Eng. C. L., 731), in which it was held that a person who wanders from the highway on to waste land adjoining, and falls into an excavation left unguarded, and over which land persons passed *ad libitum*, could not recover for the damage he sustained by his fall, is cited and approved.

But neither that case nor the case in the Court of Appeals governs this case. In both cases the rights of travelers in the highway were not in question. The persons injured were knowingly out of the highway, and traveling on the private property of the owners, and although the owners having acquiesced in the use of the land by persons passing over it, could not maintain trespass against such persons until the license was revoked, yet those who traveled over it did so subject to all the risks incident to the route traveled, and the owners owed such persons no duty to put up fences or other guards to protect them against such risks.

To authorize an owner of land adjoining a highway to require travelers lawfully passing along it to keep within the limits of it, as laid out or dedicated, he must indicate, in some proper way,

where the boundaries are, and when that is done he is relieved from liability for injuries sustained outside such limits.

To hold a traveler, a stranger to the locality, bound to keep within the limits of a lane or alley in the night as well as in the day, and that the owner of adjoining land may dig pits in his land five, or six, or seven feet from one of the margins of the street, and if the traveler falls into it, and is injured, he is without remedy against the owner of the land on which such pit is dug, is so monstrous, so unjust and so unreasonable, that it needs but be stated to be repudiated. Had this opening into which plaintiff fell been on the front side of the store, and there was nothing to protect persons from falling into it, the case of Cleveland would make the owner liable to the plaintiff.

The excavation into which he fell was in the rear of defendant's store, some seven or eight feet from the margin of the alley, without any guard about it, or any thing to show that the street did not extend to the wall of the building; travelers had the right to assume that the alley extended to the building as laid out, or added by dedication to the public for their use as part of the highway.

Alleys are laid out in the rear of stores and other buildings to afford to the owners and persons having business, easy access to the building, and the land is as effectually dedicated lying between the public street and the building, as it would be, were the front of the building set back from the street, and no fence set up to indicate the owner's intention to exclude the public.

It is impossible for a traveler to ascertain the exact boundaries of such an alley as the one on which the plaintiff was passing at the time of the injury. It does not appear that he had ever seen it surveyed, or in any other way was informed of its boundaries, and he was not under obligation to procure a survey of it so long as the owner had left the land between the street and his building, unseparated by any visible fence or other barrier.

It is quite common in this country to find large tracts of lands, especially wood lands, without any fence to indicate the boundary of the street, and persons with teams drive over it at pleasure for a space of six, eight or ten rods wide. Each traveler follows the track left by those who precede him, without any means of knowing where the boundaries of the highway are. Now, may the owner

dig a pit in the route over which teams have passed, outside of the highway, leave it uncovered, and not be liable to a person who falls into the pit, and is injured? I cannot believe it, nor can I sanction such an unjust rule.

How far from the margin of a street the adjoining owner may make an excavation without being liable to persons who fall into it and are injured, not having guarded it in any way so as to prevent injury, must be determined in each case, as no general rule can be prescribed that would not operate unjustly in a great many, if not majority of cases.

The jury must determine in each case the question of liability, having regard to the knowledge the traveler has of the highway, its width and the mode of its use, and especially the evidence that the road and its surroundings furnished as to the route and its width as well as to the care and caution exercised by him.

When the margin of the highway is indicated by a fence or building, the traveler is bound to conform to the margin as thus indicated, although there may be open spaces where there is no fence or building, but beyond such intervals buildings or fences exist which enable the traveler to ascertain the line of the highway.

In the *City of Norwich* v. *Breed* (30 Conn., 535), I understand the Supreme Court of Connecticut to take the view of the question that I have put forward in this opinion.

The order for a new trial must be reversed, costs to abide event.

Present — MULLIN, P. J., SMITH and GILBERT, JJ.

Order granting new trial reversed.