ST. LOUIS & S. F. R. CO. et al. v. RAY

No. 7010—Opinion Filed Dec. 19, 1916.

Rehearing Denied May 29, 1917.

(165 Pac. 129.)

1. Negligence—Condition of Land—Public Travel—Question for Jury.

Where a cause of danger to public travel exists on private land adjoining a public highway, the liability of the owner of the land for the injury from it depends on its dangerous character with reference to public travel, rather than to its exact location. The question whether it endangers public travel is as a general rule one of fact and not of law.

2. Appeal and Error — Negligence — Open, Unguarded Pit—Question for Jury—Proximate Cause — Conclusiveness of Findings.

Where a railroad company leases a part of its right of way that is open and unfenced, adjoining a public street in a city, for the purpose of a grain elevator, and the tenant in erecting the elevator excavates a pit, 15 by 30 feet and six to 12 feet in depth, and the elevator is destroyed by fire, and the pit is allowed to remain unguarded, and the railroad company makes use of the leased ground adjoining the pit for the purpose of loading and unloading freight from its cars, and the teams and wagons in moving the freight make a plain and distinct roadway leading from the public street over onto the right of way, and near the pit, and while the pit is open and unguarded the railroad company executes a second lease to the tenant for the same purpose as the first, and the plaintiff, a stranger in the city, passing along the public street upon a dark night, is misled by the roadway leading therefrom onto the right of way, and following the same, without fault on his part, falls into the pit and is injured, held, that both the railroad company and its tenant were negligent in allowing the pit to remain open and unguarded, and whether or not this negligence was the proximate cause of the injury complained of was a question of fact for the jury, and its finding, being supported by the evidence, is conclusive on this appeal.

(Syllabus by Galbraith, C.)

Error from District Court, Noble County: A. H. Huston, Judge.

Action by John W. Ray against the St. Louis & San Francisco Railway Company and E. J. Miller. Judgment for plaintiff, and defendants bring error. Affirmed.

W. F.Evans, R. A. Kleinschmidt, and E. H. Foster, for plaintiff in error Railway Company.

P. W. Cress, for plaintiff in error Miller.

Henry S. Johnston and Horace Speed, for defendant in error.

Opinion by GALBRAITH, C. This action was for damages on account of personal injuries received by the defendant in error, John W. Ray, by falling into a pit on the land of the railway company, made by its tenant, Miller. There was a trial to the court and a jury, and a verdict returned for the plaintiff against both of the defendants, upon which judgment was rendered, and from which both the railway company and its tenant appeal.

It appears that: The St. Louis & San Francisco Railway Company built into the city of Perry, after the city was located and established, and that the company building the road acquired as a part of its right of way the property in block 14 of the city, and that at the intersection of Fifth and D streets the property of the railroad company extended to Fifth street. There was no sidewalk or fence along the east side of Fifth street marking the line between the street and the company's property, and the right of way at that point remained open and unfenced. In 1904 the St. Louis & San Francisco Railroad Company leased a portion of its right of way in block 14 to E. J. Miller for the purpose of erecting a grain elevator thereon. In the construction of the elevator a deep pit was dug on the lots some 30 feet in length by 15 feet in width and varying in depth from six to 12 feet, walled with stone, and unevenly paved at the bottom with stone and cement. That in 1908 the elevator erected on this lot was entirely destroyed by fire, and from that time to November 22, 1911, the date of the accident, this pit remained exposed and unguarded. In 1909 Miller's lease expired, and the railroad company executed a new lease for the same purpose and for a term of five years. A switch had been constructed by the railroad company along the side of the elevator, and remained after the elevator was destroyed, and was used by the railroad company and its patrons for receiving and discharging freight. There was a board culvert over the gutter on the north side of D street, where it was intersected by Fifth street, and a plain wagon track passing from the culvert in a northerly direction from Fifth street over to the railroad property and

near the switch, circling around to within six or ten feet of this excavation and then led back to the culvert on Fifth and D streets.

John W. Ray, the defendant in error, was a citizen of Guthrie, Okla. One of his daughters resided at Perry on Fifth street, about a block and a half from the Santa Fe Railroad Company's passenger station. On the night of November 22, 1911, Ray, returning from Kansas, stopped at Perry to visit his daughter. He was an old man near 80 years of age. He had two hand grips, and undertook to walk from the station to his daughter's house. He passed up D street until he came to Fifth and turned up Fifth street, passed over the culvert, and, thinking he was proceeding up Fifth street, followed the track made by wagons hauling freight to and from the cars on the switch of the railroad company, and followed the track until it turned from the pit toward Fifth street. There he stopped and set down his grips, and, seeing a light across in a northerly direction, which he thought was an electric light in front of his daughter's house at the corner of Fifth and E streets, advanced toward it, taking three or four steps, fell into this pit, and was injured.

It was the theory of the plaintiff that both the railroad company and its tenant, Miller, were guilty of negligence in permitting this pit or excavation to remain open and unguarded, and that the path or roadway leading from the street to the property was an invitation or lure to the plaintiff, or any other traveler on the street, to pass upon this property, and in so doing they were liable to fall into the pit and be injured, and that such an accident was liable to happen, and ought to have been contemplated by the railroad company and Miller, and that it was negligence not to do so, and such negligence was the proximate cause of his injury. Both the railroad company and Miller denied liability, and maintained that this was private property, and that they had a right to dig the pit thereon and maintain it as they pleased, and that Ray was a trespasser on the property, and that they were in no way liable for his injury. The railroad company as well as Miller interposed a demurrer to the petition, and again demurred to the plaintiff's evidence. These were overruled by the court, and the ruling was assigned as error by each of them.

It seems that the petition stated the necessary elements of actionable negligence against each of the defendants. It charged that Miller made this pit or excavation on this lot, and left it unguarded and exposed, and that the railroad company, by inviting its patrons to use the lot for the purpose of receiving and loading freight into the cars upon its switch thereon, made the roadway from Fifth street over and across the lots; and by reason of this roadway, Ray, as a traveler on the street, mistook it for the street, and in so doing fell into the unguarded pit and was injured, setting out the extent of his injuries in detail. He charged the defendants owed him the duty to have put up a fence or a guard around this excavation, and that they each failed to discharge this duty, and that his injuries proximately resulted therefrom.

The evidence of Ray as to how he happened to be injured is corroborated by other witnesses and supports the allegations of the petition. After testifying that it was late at night and very dark when he left the Santa Fe train at the passenger station, he testified as follows:

"Q. Now, how did you, how could you locate yourself then as to what you—how you were going? A. The only way was feeling my way in the road with my feet. Q. Feeling your way with your feet? A. With my feet; I was walking, and the only way—I couldn't see the ground. Q. How far did you continue up D street? A. Up to Fifth street. Q. Then what did you do? A. Crossed over on the bridge; I could feel when I crossed the culvert. Q. Could you feel the difference between the dirt—. A. And the plank. Q. Wait a minute; could you feel with your feet the difference between the dirt road— A. I could feel the plank. (Objected to as leading. Overruled.) Q. Did you feel with your feet the difference between the dirt road and the bridge? A. Yes, sir. Q. Then after you crossed the bridge over D street and Fifth street, then where did you go? Then what did you do? A. I thought I was going right up Fifth street one block to where Mr. McCormick lived, I had got there within a block of it. Q. Now you started, as you thought, in that direction; what did you do from that time on? A. I went along in the road; went along in the road. Q. How did you know that you were in the road? A. From the way it felt under my feet and there was no weeds. Q. You can tell the jury how you knew that you were in the road. * * * A. I went that way I expect 75 feet or 80 feet perhaps, I thought I was on Fifth street; at that point I saw a light; there was a barn, it might have been before, a hay barn, right ahead of me, but when I came out the other side I could see a light in a house, a candle light or a lamp light or something of that kind, and there is an arc light on the corner of E and Fifth streets, but it didn't burn any; it wasn't alight at all that night. Q. There was no light that night? A. No, sir. Q. You say you saw a light in the house? A. A light in the house. By this time I was getting pretty tired with these grips, and set them down

for about a minute, and picked them up again and started, on the left of that a little, because I knew that wasn't my son-in-law's light, and I made three or four or five steps, and I fell right into the pit. Q. You can tell the jury now as to what you did after taking up the grips as to the feeling of the ground with your feet. * * * A. It felt like I was in the road. I felt like I was traveling in the road. I thought I was in Fifth street then."

The rule determining the liability of the landowner and its tenant is well stated by the Supreme Court of Connecticut in Crogan v. Schiele, 53 Conn. 186, 1 Atl. 899, 5 Atl. 673, 55 Am. Rep. 88:

"Where a cause of danger to public travel exists on private land adjoining a public highway, the liability of the owner of the land for an injury from it depends on its dangerous character with reference to public travel, rather than its exact location. The question whether it endangers public travel is, as a general rule, one of fact and not of law."

Again in the course of the opinion the court said:

"The rule laid down in City of Norwich v. Breed, 30 Conn. 535, was stated after an examination of the Massachusetts case and English cases cited above, was declared upon full consideration, and places the liability upon true grounds, and has been cited in other jurisdictions with approval. An extract * * * from that case will suffice. 'We think that in making the defendant's liability to depend upon the dangerous condition in which the excavation was left by the defendant rather than upon its distance from the street, the judge adopted the true criterion. It is the dangerous character rather than the exact location of the excavation that determines the duty and consequent liability of the defendant in this respect. * * * Whether the excavation could, with a due regard to the rights of passengers on the street, be left unguarded, or could not, depended upon the question whether, being unguarded, it endangered the travel or not; if it did not, no matter how near it was to the line of way; if it did, no matter how far it was removed.' It is plain that there was a duty upon the defendant in reference to the public use of that public way."

In Beck v. Carter, 6 Hun (N. Y.) 607, the rule is announced as follows:

"To authorize an owner of land adjoining a highway to require travelers lawfully passing along it to keep within the limits of it, as laid out or dedicated, he must indicate, in some proper way, where the boundaries are. and when that is done he is relieved from liability for injuries sustained outside such limits. To hold a traveler, a stranger to the locality, bound to keep within the limits of a lane or alley in the night as well as in the day, and that the owner of adjoining land

may dig pits in his land five or six or seven feet from one of the margins of the street, and if the traveler falls into it, and is injured, he is without remedy against the owner of the land on which such pit is dug, is so monstrous, so unjust, and so unreasonable that it needs but to be stated to be repudiated."

The facts in the above case disclose that the defendant for a long time had allowed a portion of his lot adjoining a street to be used by the public as a part of the highway; that he made an excavation on his lot about 10 feet from the line of the street, and the plaintiff, while passing over the lot, fell into the excavation and was thereby injured. In Graves v. Thomas, 95 Ind. 361, 48 Am. Rep. 727, the Supreme Court of Indiana announced the rule as follows:

"When the public have by permission traveled on foot for years over an open city lot, it is the duty of the owner, upon making an excavation in the pathway, with a view to erecting a building, to put some guard or warning for public protection, and a failure to do so gives a right of action to one who, without fault, is injured thereby."

In Young v. Harvey, 16 Ind. 314, the defendant dug and left exposed a pit on his uninclosed lot near the street. The plaintiff's horse fell into the pit and was killed. In holding the owner of the lot liable, the court said:

"If the probability" that such an accident might happen from thus leaving the pit exposed "was so strong as to make it the duty of the owner of the lot, as a member of the community to guard that community from the danger to which the pit exposed its members, in person and property, he is liable to an action for loss occurring through his neglect to perform that duty."

In Wharton on Negligence, sec. 349, it is said:

"Nor am I justified in making excavations either in the path which I have permitted other persons to traverse, or so near a public road that travelers in the ordinary aberrations or casualties of travel may stray or be driven over the line and be injured by falling into the excavations."

From these authorities it is plain that the court did not err in overruling the demurrer to the petition, and for the same reason overruling the demurrer to the plaintiff's evidence was not error, and the denial of a peremptory instruction, also complained of in the assignments of error of the railroad company.

The fifth assignment of error is as to the admission of incompetent, irrelevant, and immaterial evidence on behalf of the plaintiff. It does not appear from the assignments what the evidence was, and we are

therefore not able to determine whether the assignment is well taken or not. For the same reason the sixth assignment of error presents no question for review.

Complaint is made by the railroad company of instruction No. 5, which the court gave to the jury. That instruction is as follows:

"If you find from a preponderance of the evidence that the pit or excavation was permitted to remain by the defendants upon the premises described in such relation to the public street and in such proximity to the excavation that the defendants could reasonably have foreseen that a person traveling on the public street in the exercise of due care himself would be injured, and that the plaintiff, while traveling along the public street in the exercise of due care, was allured by the condition of the premises from the public street and into the pit and sustained the injuries complained of, then your verdict should be for the plaintiff. But before you can so find you must first find that the situation regarding the pit and driveway was one from which it could reasonably have been foreseen by the defendants that the injury might occur to a person traveling carefully on the highway."

Under the authorities heretofore set out it seems that the instructions embraced a full and fair statement of the law applicable to the facts disclosed by the record.

It is also complained by the railroad company that there is no proof that it was the owner of this property. The evidence is that Miller formerly owned the lots, and that he sold them to C. G. Jones, who constructed the railroad into the city of Perry under the name of the Arkansas Valley & Western Railway Company, and that the title to the lots was made to that company. However, the evidence is undisputed that the Frisco Railroad Company leased the property to Miller in 1904, and again renewed the lease in 1909, and that it used the property as a place for loading and unloading freight from its cars, and in so doing made the roadway leading from the street to the property, and which was the lure that led Ray from the street to the pit. There is no dispute in the evidence that the Frisco Company exercised dominion over this property, and its ownership sufficiently appears to establish its responsibility for the condition of the property. The evidence is not disputed that Miller made this excavation on the property, and that it was there open and unprotected when the lease was renewed in 1909, and so remained until the time of the accident, November 22, 1911. Under the authorities both the landlord and tenant, under the circumstances above recited, were liable for the negligence. Taylor on Landlord & Tenant,

sec. 195; Swords v. Edgar, 59 N. Y. 28, 17 Am. Rep. 295; Buesching v. St. L. Gas Co., 73 Mo. 219, 39 Am. Rep. 503.

The contention is made on behalf of Miller that he was not a tenant, but a mere licensee; that his dominion over this property was for the special purpose of erecting and maintaining a grain elevator thereon. We fail to see that makes any difference in his responsibility. In Hanson v. Spokane Valley Land & Water Co., 58 Wash. 6, 107 Pac. 863, the Supreme Court of Washington announces the rule in the seventh paragraph of the syllabus as follows:

"Where one made a dangerous excavation in a public way over private land, where he knew the public were invited and accustomed to travel, he was liable for injuries to a person who fell into the excavation while using the way, although he was not the owner of the land."

The same court, in Collins v. Hazel Lumber Co., 54 Wash. 524, 103 Pac. 798, in a case where a person obstructed a public highway and went on adjoining lands, which he did not own, and constructed a way around the obstruction and the person taking this way across the private land was injured, and sued the party who made the private way, said:

"The way itself was, of course, an implied invitation to use it. The mere fact that the appellant was a trespasser as to the owner of the land or that persons traveling over the way were trespassers as to the true owner, did not make such persons trespassers as to the appellant. As between the appellant and persons lawfully upon the highway, the appellant, under the conditions shown, was clearly liable to his invitee as though it owned the land. This proposition is elementary."

We consider that it does not make any difference in Miller's liability whether he was a tenant or a licensee, that his liability is in no way affected by this fact, and for that reason it was not error in the court to refuse to submit this issue to the jury in the special instruction requested by Miller.

Another assignment made by Miller is misconduct of counsel for the prevailing party in his argument to the jury. Complaint is first made of this in the motion for a new trial, where the alleged misconduct is set out, this motion being supported by affidavit. The record fails to show that objection was made at the time, and an exception saved to the action of the trial court in ruling thereon. In the absence of an affirmative showing in the record that objection was made to the conduct complained of at the time and exception saved to the ruling of the court thereon,

no question is brought up for review by this· assignment, and for that reason this assignment is not well taken.

A great many authorities from other jurisdictions are cited in the brief of counsel for· the plaintiffs in error, but none of these cases,. so far as we have been able to discover, announce the controlling principle in the instant case.

It is contended· on behalf of the railroad company that Faurot v. Oklahoma Wholesale Grocery Co., 21 Okla. 104, 95 Pac. 463. 17 L. R. A. (N. S.) 136, announced the controlling principle, and its application relieves the company from liability in this case. We do not so read that decision. The rule announced in that case does not apply to the facts in the instant case. It does, however, seem that the rule announced and applied in St. L. & S. F. R. Co. v. Bell, 58 Okla. 84, 159 Pac. 336, L. R. A. 1917A, 543, is applicable and controlling in this case, and establishes the liability of the railroad company as well as its tenant. In the Bell Case running water caused the pit upon the railroad company's right of way near the highway, and the railroad company negligently permitted weeds to grow up around it so as to obstruct the view of the traveler on the highway, and he thereby ran into the pit, while in the instant case Miller, the tenant, made the pit on the right of way, and neither he nor the company did anything to give warning of the danger it invited by reason of its proximity to the public street and the roadway leading therefrom near to it. The railroad company leased this land with the unguarded pit upon it, and continued to use the property in the discharge of its own business, and in so doing made the roadway from the highway, which roadway became the lure that caused the ˴traveler to wander from the highway onto the private property, and to· fall into the unguarded pit thereon.

In the instant case the questions were largely questions of fact. These were properly submitted to the jury by the court in its instructions, and the jury found that both the railroad company and Miller were responsible for the maintenance of this pit on this vacant property, and that they were negligent in not inclosing it by a fence or something that would warn travelers and prevent them from falling therein, and that this negligence was the proximate cause of the plaintiff's injuries, and should have been foreseen and guarded against, and for not doing so the liability of each of them was established.

There is evidence in the record to support these findings. We fail to find any prejudicial error in the proceedings, and therefore· conclude that. the judgment appealed from should be affirmed.

By the Court: It, is so ordered.