DETERMINED IN THE

# COURT OF ERRORS AND APPEALS

OF THE

## STATE OF NEW JERSEY,

NOVEMBER TERM, 1896.

### JACOB G. DANECK, PLAINTIFF IN ERROR, v. THE PENN-SYLVANIA RAILROAD COMPANY, DEFENDANT IN ERROR.

A public highway was so constructed that it terminated twenty feet west of a previously-existing railway cut, the depth. of which was five feet or more below the crown of the highway. Of the twenty feet of land between the cut and the highway, a strip five feet wide, next to the cut, was owned by the railway company, and the remaining fifteen feet, next to the highway, constituted an unused strip owned by a third person. This intermediate land was a foot or more above the crown of the highway and rose higher to the west. The railway cut was not fenced or otherwise guarded against accident to users of the highway. A, who was ignorant of the locality, accompanied by a friend, in the dark, at night, drove a horse and buggy through the highway and up over the intermediate land, into the railway cut, where he sustained injury. *Held*, that no liability for the damage suffered by A attached to the railway company.

On error to the Supreme Court.

On the night of the 15th of April, 1895, the plaintiff in error, with another man, attempted to drive a single horse, drawing a buggy in which they rode, from Elizabeth to Newark.    After reaching North Elizabeth they turned westerly through Louisa street.    That street is graded, flagged and curbed to a point about fifteen feet easterly from the easterly line of the right of way of the Pennsylvania Railroad Company, at which point the street terminates.    The fifteen feet of land between the terminus of the street and the defendant's right of way is the property of a third person.    When the street was graded the crown of its westerly terminus was a foot below the adjacent land, which, from thence westerly, rose still higher above the roadway.    Five or six feet westerly from the westerly line of the defendant's right of way, and about twenty feet from the westerly terminus of Louisa street, the railway of the defendant, prior to the construction of Louisa street, was, and from thence hitherto has been, constructed through a cut which runs at right angles to Louisa street, and is in depth some five feet lower than the crown of the street.    Between the terminus of the graded street and the railroad cut there is a low earth embankment.

When the plaintiff and his companion reached the westerly end of Louisa street, being ignorant of the locality, they continued on over the fifteen feet of land which intervened between that and the defendant's right of way, into and upon the right of way and over the embankment there, and plunged down the slope beyond it into the railroad cut.    The consequence was that the horse was killed, the buggy was broken up and the plaintiff was injured.

For the damage thus occasioned, the plaintiff brought suit against the railroad company.    The facts stated being shown at the trial, the court directed the jury to find for the defendant.    That direction is now the subject of review.

For the plaintiff in error, *Samuel Kalisch.*

For the defendant in error, *James B. Vredenburgh.*

The opinion of the court was delivered by

THE CHANCELLOR.  The single question presented is whether there existed any liability upon the part of the defendant in error for the injury which the plaintiff sustained.

It is insisted in behalf of the plaintiff that it was the duty of the defendant to have fenced or otherwise to have suitably guarded the terminus of Louisa street against the railway cut, and that because of its failure to do so, the plaintiff may maintain his action.

The doctrine invoked is that an unguarded excavation upon land outside a public highway, but so near it as to endanger those who pass along the way in the exercise of ordinary caution, is a public nuisance from which may spring a right of action to one who suffers individual injury therefrom.  The doctrine appears to be recognized by the weight of authority.  *Barnes* v. *Ward,* 9 *C. B.* 392; *Beck* v. *Carter,* 68 *N. Y.* 283; *McAlpin* v. *Powell,* 70 *Id.* 126, 133; *Temperance Hall Association* v. *Giles,* 4 *Vroom* 260, 264; *Vanderbeck* v. *Hendry,* 5 *Id.* 467, 471; *Norwich* v. *Breed,* 30 *Conn.* 535; *Wood Nuis.,* § 271; *Ray Neg. Imp. D.* 26; *Ell. Roads & S.* 542, and the cases hereafter cited, although it seemingly has not the approval of the Supreme Court of Massachusetts. *Howland* v. *Vincent,* 10 *Metc.* 371; *McIntire* v. *Roberts,* 149 *Mass.* 450.  Our Supreme Court, in the case of *State* v. *Society for Establishing Useful Manufactures, &c.,* 13 *Vroom* 504, in its decision upon motion to quash the indictment, accepted the doctrine broadly as to excavations made after the construction of the highway, but in its decision in the same case, upon the rule to show cause why there should not be a new trial (15 *Vroom* 502), held that the doctrine was not applicable in the case of a highway dedicated after the making of the excavation, for in that case the dedication was accepted by the public, subject to the existing adjacent excavation, and the duty to protect it became a duty of the public and limited its decision to that point.

It is not necessary, in the disposition of the present case, that any opinion shall be expressed as to the tenability of the

doctrine invoked. Assuming its correctness for the purpose of disposing of this case, it is observed that an essential requisite to the defendant's liability and limitation of the doctrine is that the unguarded excavation shall be so near the highway as to endanger those who use the way with reasonable care. What is meant by such proximity is well defined in the following quotation from the opinion in *Hardcastle* v. *South Yorkshire Railway Co.*, 4 *Hurlst. & N.* 67 ; 28 *L. J.*, *Exch.* 139 : "When an excavation is made adjoining a public way, so that a person walking on it might, by making a false step, or being affected with sudden giddiness, or, in the case of a horse or carriage, who might, by the sudden starting of a horse, be thrown into the excavation, it is reasonable that the person making such excavation should be liable for the consequences. But when the excavation is made at some distance from the way, and the person falling into it would be a trespasser upon the defendant's land before he reached it, the case seems to me to be different. We do not see where the liability is to stop. A man going off a road on a dark night and losing his way, may wander to any extent, and if the question be for the jury, no one can tell whether he was liable for the consequences of his acts upon his own land or not. We think the proper and true test of legal liability is whether the excavation be substantially adjoining the way, and it would be very dangerous if it were otherwise, and if, in every case, it was to be left as a fact to the jury whether the excavation was sufficiently near to the highway to be dangerous."

In that case the plaintiff's intestate at night walked along an ancient public footpath, running beside the by-wash of the defendant's canal, and coming to a turn in the path to a bridge over the by-wash, he by mistake continued straight on out of the path upon the defendant's land some twenty or thirty feet over a buttress and into a reservoir of the defendant, where he was drowned. It was held that the defendant was not liable in an action brought by the administratrix. The decision was put upon the principle of *Blythe* v. *Topham*, *Cro. Jac.* 158 ; 1 *Rol. Abr.* 88, where it was held that if A,

seized of a waste adjacent to a highway, digs a pit in the waste, within thirty-six feet of the highway, and the mare of B escapes into the waste and falls into the pit and dies there, B shall not have an action against A, because the making of the pit in the waste, and not in the highway, was not any wrong to B, but that it was the default of B himself that his mare escaped into the waste.

In the case of *Hounsell* v. *Smyth*, 7 *C. B.* (*N. S.*) 729, the allegation of the declaration was that an unguarded quarry was situate near to and between two public highways in a waste, and that it was dangerous to persons who might accidentally deviate or stray from the highways or intentionally cross the waste from one to the other, and it was held, as the danger was not alleged to the persons passing along either highway, but to persons who might accidentally deviate or stray from or intentionally leave the ways, that no duty to guard the quarry appeared, and therefore that no liability for the injury complained of existed.

The case of *Binks* v. *South Yorkshire Railway Co.*, 3 *Best & S.* 242, is perhaps as nearly like the case before us as any adjudication that can be found. There a canal was constructed beside an ancient footway, at a distance of about twenty-four feet from it, with a towing-path on the bank of the canal and an intermediate space between that and the footpath, which intermediate space, through laxity on the part of the defendant company, was generally walked over by the public and had become obliterated as a dividing line; yet it was held that the proximity of the canal to the footpath was not such as imposed upon the defendant company a duty to guard it or a liability for accident to one who strayed from the path.

The definition of proximity which is stated and illustrated in these cases is accepted, without exception, I think, by all the cases which have acquiesced in the doctrine invoked by the plaintiff in error.

It is deemed that the case considered is clearly within these adjudications. The railway cut was twenty feet or more from

the street and was separated therefrom not only by five or more feet of intervening land belonging to the defendant, but also by a strip of land fifteen feet wide, which belonged to some third person. All this land was above the crown of the street and presented enough barrier to progress towards the railway cut to plainly mark the departure from the highway and excite to caution. It is deemed that the cut did not substantially adjoin the highway, so that by false step or in surprise at the sudden termination of the highway the plaintiff could have been thrown into it, but, on the contrary, that the case made is one in which, in the dark at night, the defendant wandered from the highway over the land of the third person into the land of the defendant, and from thence into the railroad cut. We think that the defendant is not liable for the injury consequent upon the plaintiff's accident, and consider that the jury was properly instructed.

Let the judgment be affirmed.

*For affirmance*—THE CHANCELLOR, DIXON, GARRISON, GUMMERE, LIPPINCOTT, MAGIE, VAN SYCKEL, BARKALOW, BOGERT, HENDRICKSON, NIXON. 11.

*For reversal*—None.