64  453
67  328

WALTER FOX AND LYDIA FOX, HIS WIFE, PLAINTIFFS BELOW, v. WILLIAM WHARTON, Jr., AND COMPANY (INCORPORATED), DEFENDANTS BELOW.

Submitted July 10, 1899—Decided February 26, 1900.

1. When the work of the construction, repair or alteration of a street railway track in the streets of a city is authorized by law, and excavations are made in such work, which are to be kept open at night, the duty is incumbent upon those in the performance of the work, under a contract with the street railway company, to exercise reasonable care to guard such excavation to protect those in the use of the streets from injury from such excavations.

2. In order to be reasonable the degree of care must be a high one, because those who are in the use of the street have the right to assume, unless their attention has been attracted to the danger, that the street is free from such excavations.

3. Such persons as are in the use of the highway or street are bound to the exercise of only ordinary care to avoid injury from such excavations.

4. The question of whether the defendant, in an action for injuries received by falling or driving into such excavations, has exercised reasonable care in guarding, signaling, screening or fencing such excavations, when the facts are in dispute, or where inferences may be reasonably drawn either in favor of or against the exercise of such care, is one for the jury, as well as the question of whether the plaintiff under such circumstances is guilty of contributory negligence.

5. When the fact of injury and the extent thereof are in dispute, the jury as matter of fact must determine the injuries and condition of the injured plaintiff, and determine whether the injury is the proximate result of the accident, and apply the principle of compensation and fix the damages under the proof, and if the amount be not the product of bias, feeling or prejudice, or excessive, the verdict will not be set aside.

On rule to show cause on behalf of defendants.

Before MAGIE, CHIEF JUSTICE, and Justices VAN SYCKEL, GARRISON and LIPPINCOTT.

For the plaintiff, *Howard Carrow.*

For the defendants, *Joseph H. Gaskill.*

The opinion of the court was delivered by

LIPPINCOTT, J.   This, as it now stands, is an action by Walter Fox and Lydia Fox, his wife, against William Wharton, Jr., and Company, a corporation, to recover damages for personal injuries inflicted on Lydia Fox, and for damages consequently arising to Walter Fox, her husband, by reason of such injuries.

Originally the Camden and Suburban Railway Company was joined in the action also as a defendant, but at the trial as no liability was shown against it, a voluntary nonsuit was entered, and the cause proceeded to a verdict against the other defendant.

The evidence shows that this defendant was engaged in the construction, alteration and repair of a railway track for the Camden and Suburban Railway Company, on Market street, in the city of Camden, under a contract between that company and defendant, held liable in this action, and in such work the defendant made a great many excavations in the street for the purpose of welding together the ends of the rails of which the tracks were composed, and in repairing the streets between the tracks.   These excavations between and at the ends of the rails were necessary in order to have space by the side of and underneath to do the welding.

The work in which this defendant was engaged was a lawful one, and authorized by law to be done.   This is conceded in the case, and is the basis upon which the action was tried, and in view of which liability was sought to be established.

On the 18th day of August, 1896, the plaintiff Walter Fox, of Philadelphia, hired a horse and carriage and came across the river in the evening of that day to visit some friend or relation in the city of Camden.   He was driving along Market street, having in the carriage along with him his wife, his daughter and a servant girl, when his horse and carriage dropped into an excavation in the street, about two feet deep. It appears in the endeavor to get out of this excavation his horse stumbled into another at the same place.   The front

part of the carriage dropped into the first excavation, and as the horse was pulled out the hind part of the carriage fell in, and then the horse fell into another one, dragging the front part of the carriage down again, when the horse was taken hold of by some of the persons on the street and the carriage extricated from its position.

Mrs. Fox alleges that she was thrown forward and about in the carriage, striking certain portions of it with her head, back, arms and legs, and that she received very severe and permanent injuries.

These holes or excavations on that night were left open because of a rainstorm coming on which prevented the servants of the defendant from filling up the same.

It appeared that the plaintiff was driving along on the track of the railway, about eighty feet behind a car which was proceeding along the street. The night was a dark one. He testified that he saw no excavation ahead of him and no obstructions or signals which would indicate danger to him, on the part of the street which he was driving. He testified that he saw red lights on piles of dirt near the curb of the street, but none ahead of him on the street which would indicate any danger ahead in the direction in which he was traveling, and he supposed the street was safe. The street was a lighted one, but not sufficiently for any excavations to be seen.

There is a great deal of evidence on the part of the plaintiffs, all of which either shows or tends to show that there were no signal lights at or near these excavations in the streets, and no signals at or near them to indicate danger. The evidence on the part of the plaintiffs, and several witnesses, shows that the dirt from the excavation was thrown out near to the curb in piles, or at least quite a distance from the railway track, and that upon these piles of dirt at those distances from the tracks red lanterns with lights in them were placed. The evidence shows that the excavations were in nowise fenced, and that there was no watchman there to warn the plaintiffs

of danger, and that no warnings were given them by anyone as they approached the excavations.

The plaintiffs contend that the defendant had failed to exercise care in guarding the public from the danger of these excavations, and thereby the injury arose, and that they were free from any negligence contributing to such injury.

On the part of the defendant the evidence of two or three witnesses showed that whilst the excavations existed there substantially as proven by the witnesses for the plaintiffs, yet the dirt from these excavations and the surplus dirt from the repairment between the tracks was piled up alongside the track on which the cars ran, about eighteen inches therefrom, and upon it red lights were placed, and also a light was placed as near the track as possible so as to allow space enough for a car to pass, and that cars were passing along this track on which the plaintiffs were driving.

It was contended that these signals, in the exercise of reasonable care, were sufficient to warn the plaintiffs of the danger of these excavations.

There is also evidence of one or two witnesses that there was a watchman near the place who shouted to the plaintiffs to turn to the left, to the other side of the street, and avoid these excavations, and that another person did the same. It does not appear by this evidence that the plaintiffs heard these shouts, and it is denied by the plaintiffs and other witnesses that the watchman was there, or that any warnings were given to or heard by them.

The plaintiffs testify that they both did their utmost to observe any danger or indications of danger. Mrs. Fox says she told her husband to "look out" and be careful, and that they were proceeding in the dark with the horse on a walk. Other witnesses testify that the horse was walking when the accident occurred.

It will be observed that the excavation was not a deep one, but slight in its character and perhaps difficult to observe. It will be observed that the plaintiffs saw a car proceeding safely over the space. The plaintiffs testify that from their

observation of the lights and everything else they could see, they supposed they were safe in going along the street on the part of it and in the direction in which they proceeded.

Under this evidence on the rule to show cause the defendant contends that, upon the question of liability, the verdict, which was against the defendant, is contrary to the weight of the evidence and should be set aside. The defendant contends that reasonable care was exercised to guard these excavations, and besides that the situation was such by reason of guards, signals, warnings and otherwise, that the plaintiffs in going along the street as they did were in the want of reasonable care to protect themselves from accident.

Neither party offers any criticism of the charge of the learned trial justice to the jury.

The conclusion reached is that these questions were all questions of fact for the jury, that under the evidence it was for the jury to say upon which side the weight of evidence existed and whether the plaintiffs had established liability by a preponderance of evidence.

The situation was one which, as it now appears, either upon the evidence for the plaintiffs or for the defendant, and upon all the evidence, the jury could reasonably and legitimately find liability. There did not appear upon this branch of the case much dispute as to the facts, except some difference as to the location of the lights on the piles of earth. The question whether these lights were so placed as to mislead persons of ordinary prudence on the highway was a serious one. As the evidence stood before the jury, the preponderance of evidence would appear to locate them as the plaintiffs located them, and that would lead certainly to a conclusion on their part that this way was a safe one to travel, and even though it be that they were placed as the defendant contends, it will be perceived that over this space a car could pass, and did pass in safety, ahead of the plaintiffs, which occurrence the plaintiffs observed, and besides the lights were to the side of the track, on either side, not crosswise, but longitudinally along the track, the question would arise even then whether the way

which the plaintiffs took was not the prudently safe one. The lights were certainly on the side of the track at some distance from it, and it can be clearly perceived that it might be negligence on the part of the plaintiffs to take the space on that side towards the curb to proceed in the face of that observation, and the plaintiffs say they did observe lights on that side. It is true they place them at the curb, as do all the other witnesses in plaintiffs' behalf. Still they were on that side, and with them in that situation it would seem to have been the exercise of ordinary care to avoid traveling there.

The law is clearly settled that when a person makes an excavation in a highway, and proposes to leave it open at night, he must exercise reasonable care to guard the public in the use of the highway from injury because of it, and the care must be great in order to be reasonable, for all who use the highway have the right to assume, if there is nothing brought to their attention that indicates the existence of danger, that the highway is safe, in the exercise of ordinary care on their part. They have the right to assume that no one has dug a trench or other excavation in the highway, into which they may be precipitated. Whether such care had been exercised in this case, on the part of the defendant, or whether the want of it caused this accident and injury, were questions for the jury.

The plaintiffs were bound to the exercise of ordinary care to avoid danger. The street had the ordinary street lights, but several witnesses say that these did not reveal these excavations, but taking all the signals there and all the circumstances, the jury has first to settle the disputed evidence and then determine whether the plaintiffs omitted to exercise ordinary care to protect themselves from danger.

It will be observed that shortly after this accident a guard was placed around these excavations. It was not for the court to determine the character of guards, screens or signals which should have been placed there in the exercise of reason-

able care by the defendant.    That was a question for the jury, and it was submitted to them.

The question of negligence and contributory negligence was properly submitted to the jury.    It was a fact case, and there appears no reason why the verdict should be disturbed as against the evidence or the weight of it.

In this case it is not deemed that the damages in law are excessive.

The verdict was for the sum of $750 for the husband, and $3,500 for the wife.

The evidence was much in dispute upon the question of injuries to the wife.

The evidence on the part of the plaintiffs shows that her skull was fractured, her back, arms and leg injured ; that she was a long time in bed, that she was unconscious much of six weeks subsequent to the accident, that she was subject to constant convulsions, that she suffered great pain, which still continues.    Her own evidence, the evidence of her husband and other witnesses establish these facts.

The evidence of her attending physician, who was called the day after the accident, a physician of long standing, and well known and of high repute, testifies to the grave condition in which he found her, the grave condition in which she has since been, her great suffering, her paralysis of limbs, on one side, her absolute helplessness, and that her injuries are permanent and progressively worse in their character, and that she will be utterly unable to do any work or labor in the future, or to enjoy life to any degree whatever, and that her condition will shorten her life and be the cause of her death.

Another physician of high repute, called more for the purposes of the case, corroborates fully her attending physician. Both these physicians trace her injuries and condition to the accident.    The evidence on the part of the plaintiffs is that she was a woman of good health before the accident.

The defendant relies upon some of the circumstances at the time of the accident, such as the reply that no one was hurt, the fact that the horse was not injured nor the wagon broken,

that the carriage was not such that she could have been injured as she says she was; the carriage was inspected by the jury as bearing upon this question; evidence is also produced to show that she was about her work the next day, and that she presented no appearance of injury. Against these things stands the evidence of her attending physician who saw her some time the next day in bed, and who fully describes her injuries and appearance.

Again the defendant presents the evidence of two or three physicians of high repute, who have made examination of her, before the trial, and whilst they do not dispute her grave condition, and her sufferings during this time and at the time of trial, yet they quite emphatically and at great length, under protracted examination and cross-examination, gave their opinions that her sufferings and diseases and her condition at the time of trial, are not due to the accident, but have arisen naturally or from some other cause than this accident.

It can only be concluded that this presented a question for the jury, a question of fact peculiarly within their province, to fix the cause of her injuries and condition, and as they found the contentions of the parties to be established, apply the principle of compensation to guide them in the amount of their award.

If the jury found the injuries and condition of the wife established as caused by the accident, then in no sense in law can the damages be considered as excessive. The verdict plainly shows that this was the view taken by the jury.

In law no reason is perceived why this verdict should be set aside or the damages reduced because they are excessive.

The rule to show cause is discharged.