EMMA K. VOSLER. ADMINISTRATRIX, PLAINTIFF. DE-
FENDANT IN ERROR, v. THE DELAWARE, LACKA-
WANNA AND WESTERN RAILROAD COMPANY. DE-
FENDANT, PLAINTIFF IN ERROR.

Argued March 22, 1909—Decided June 14, 1909.

1. Where a railroad company, in providing a platform to be used by
passengers going from its station waiting-room to its railroad
trains, left an opening in such platform for the purpose of a stair-
way from the platform to a cellar under the waiting-room, the
opening being unprotected and within six feet of the exit from the
waiting-room, it is the duty of the company to see that its pas-
sengers, using the platform, have some notice or warning of the
opening, and where at night a sufficient light would fulfill that
duty, it becomes a jury question whether sufficient warning was
given when the sufficiency of the lights provided is rendered doubt-
ful by the testimony.

2. In an action brought to recover damages for the death of plaintiff's
intestate it appeared that he was last seen leaving the waiting-
room of defendant's railway station by a side door for the
apparent purpose of taking a passage on one of its trains, and
after a few hours was found dead, at the bottom of a stairway
leading from the station platform, with his neck broken ; that the
entrance to the stairway was unprotected and within six feet of
the exit door. and that the opening for the stairway occupied at
least one-half of the platform. *Held,* that an inference might
reasonably be drawn that the passenger fell down the stairway
while on his way to take a train then at the station.

On error to Hunterdon County Circuit.

For the defendant in error, *William C. Gebhardt.*

For the plaintiff in error, *Max M. Stallman* and *William D.
Edwards.*

The opinion of the court was delivered by

BERGEN, J. On the night of December 20th, 1907, Uriah
Vosler was in the waiting-room of the defendant's railway
station at Washington, New Jersey, and when a train for New
York City, leaving Washington at 5:46 P. M., was called, he
started towards the platform of the station through a side

door, and was never seen again until his dead body was found, between three and four hours afterwards, at the foot of a stairway leading from the platform to a cellar under the waiting-room, the apparent cause of his death being a broken neck. That part of the passenger station of the defendant company at Washington, which it is necessary to consider in determining this case, is constructed with a platform in front of, and another connecting with it, running at right angles thereto, along the side of the station. A part of the side platform has an opening for a stairway which leads from the platform to the cellar. Three sides of this opening are protected, but the entrance to the steps is open and unprotected. The waiting-room has two exits, one leading to the platform parallel with the track, and another which opens on the side platform between five and six feet from the stairway, which is so located that if a person leaving that door should turn and walk towards the place where a train for New York would stand, he would, after walking a distance of about six feet, reach the head of the stairway, unless he should walk more than three feet away from the side of the building, that being the width of the stairway. A suit was instituted by his administratrix to recover damages resulting from his death, the negligence charged being the unprotected stairway. There was a motion for a nonsuit at the close of the plaintiff's case, and also a motion for a direction in favor of the defendant at the close of the whole case. As these motions raise the same questions they will be considered together.

The first point argued is insufficient proof of the failure of the defendant company to use due and proper care that the deceased should have a safe way, or platform, to walk on from the passenger station to the train. The only substantial ground upon which the plaintiff rested this part of her case was the want of sufficient light. From the plaintiff's case it appeared that there were two windows opening from the waiting-room to the side platform; that the waiting-room was well lighted, there being nine lights, and some light was cast upon part of the stairway regarding which plaintiff's witness, Schamp, on cross-examination, testified as follows:

"*Q.* When you went out of the waiting-room and walked out to the Phillipsburg end, and turned around, was there any light shining through the windows?

"*A.* It was not shining right at the top of the steps.

"*Q.* When you went out there to go down the stairway could you not see the railing?

"*A.* You could not see all of it; you could see it just——

"*Q.* [Interrupting.] You could see the railing?

"*A.* You could see the railing, yes.

"*Q.* Were the lights shining?

"*A.* Not on all of it.

"*Q.* Some parts of it?

"*A.* Yes; from where the lights came out of the window—but not electric lights—the end of the railing it does not shine on."

Regarding the lights outside of the waiting-room the same witness was asked, and testified, as follows:

"*Q.* Are there any other lights on the outside of the waiting-room over in that corner?

"*A.* There was no lights that night, no, sir.

"*Q.* Do you positively swear that there was none, or that you did not notice any?

"*A.* I did not notice them; there was a place for them to be there, but that one was not there.

"*Q.* Which one?

"*A.* That one right there.

"*Q.* The one over the door.

"*A.* Yes.

"*Q.* Is that the baggage door?

"*A.* Yes.

"*Q.* Is that the one nearest the stairway?

"*A.* Yes.

"*Q.* It was not burning?

"*A.* It was not burning."

This witness also testified that it was dark, but that he could distinguish things; that in passing along this place he had his hand on the railing to guide himself, but that he knew where it was and grabbed for it. It also appeared that a lamp had

been provided and put up on the outside of the building near this stairway, but that it was not burning on the night in question.

We think that a fair jury question was presented whether the defendant was not negligent in having failed to provide sufficient lights to warn passengers of the dangerous opening in a platform which they had been invited to use for the purpose of reaching defendant's trains, and that the trial court would not have been justified in withdrawing that question from the jury.

Another ground urged in support of the motions was that upon the evidence there was no causal connection between the condition shown and the death of the decedent. The contention of the defendant being that the plaintiff must present such a train of circumstances as offer a logical basis for an inference of negligence, and must remove the cause from the realm of speculation; that the mere fact that the decedent was last seen alive in the waiting-room and found four hours afterwards dead at the foot of the stairway "requires a conjecture or guess" that he walked into the stairway because of inefficient lights and guards. The fact that the deceased left the waiting-room by the side door, and if he turned along the platform towards the train after leaving the door, walking within three feet of the wall of the station, he would fall into the stairway, is not a conjecture, but on the contrary a reasonable inference, which is supported by the fact that his dead body was found at the foot of the stairway, a logical sequence of what would be likely to happen under the conditions stated. There is no evidence that the deceased was ever seen alive after he left the side door for the purpose of passing along the platform to take the train, and if he had no intention of taking the train at that time, and leaving the station, had gone back later and fallen into the stairway, it is reasonable to presume that he would have been seen by some one. On this point it is also urged that between the time the deceased left the side door and the hour when his body was found at the foot of the stairway, one of the employes of the defendant had gone down the stairway and into the cellar without dis-

covering the body, and that this is convincing evidence that the deceased did not come to his death while using the platform for the purpose of taking the train. But there was evidence that since the accident a person of about the same size had placed himself where the body was found and that another descended the stairway and entered the cellar without stepping on him, and while this experiment is fairly subject to the criticism made, that the person descending the stairway knew that the other was at the bottom and would therefore, in furtherance of the experiment, naturally avoid him, it would only affect the weight which the jury should give to the result of such an experiment, and it was for them to say whether the employe could not have gone down the stairway and entered the cellar without discovering the body.

The next point urged is that the deceased was guilty of contributory negligence. This is based upon the fact that the deceased had often been at this station; that he had used the waiting-room a number of times, and therefore will be presumed to have known of the existence of this stairway. The deceased was a member of the police force of the city of New York. He did not live in Washington, but came there as a visitor, and there is no evidence that he left the station by the side door in order to take the train on any other occasion. What he did was to use a platform provided for the use of passengers, which reasonable care required the defendant to keep lighted in such a way as to disclose a pitfall placed within a very few feet of a regular exit provided for passengers. Under the circumstances the question of the defendant's contributory negligence was properly submitted to the jury.

The judgment will be affirmed, with costs.

*For affirmance*—THE CHIEF JUSTICE, GARRISON, SWAYZE, REED, TRENCHARD, PARKER, BERGEN, VOORHEES, MINTURN, BOGERT, VREDENBURGH, VROOM, GRAY, DILL, CONGDON, J.J 15.

*For reversal*—None.