EMIL W. MATHEKE, RESPONDENT, v. UNITED STATES EXPRESS COMPANY, APPELLANT.

DANIEL F. O'CONNELL, RESPONDENT, v. UNITED STATES EXPRESS COMPANY, APPELLANT.

Argued June 23, 1914—Decided November 16, 1914.

1. The plaintiffs, while making repairs to an elevated railroad structure in a highway, stood upon a temporary scaffold suspended in the air some ten feet above the level of the street, along which a covered express wagon of the defendant was being driven, the top of which came in contact with the bottom of the scaffold, causing injuries to the plaintiffs for which they recovered damages. The trial court charged the jury that it was the duty of the driver to drive in such a manner as not to injure the plaintiffs, and refused to charge a request by the defendant that the driver had a right to presume that the street was free from a scaffold suspended from the elevated structure. *Held*, that the instruction was erroneous and that the request should have been charged.

2. Highways to their entire extent are presumed to be free from temporary and unusual conditions that obstruct or endanger passage thereon, and a driver is under no duty to look for such interferences with travel; if he sees them he must use reasonable care to avoid them, but he is not negligent merely because he does not look for them.

---

On appeal from the Supreme Court.

Two actions for damages arising out of the same accident were tried together in the District Court, where the plaintiffs had judgments which were affirmed by the Supreme Court, whose judgment is brought up by this appeal.

The plaintiffs were making repairs to the elevated railroad structure at the juncture of four streets, in the city of Hoboken, where the elevated railroad is about forty feet above the street level. The plaintiffs were standing on a temporary scaffold of planks, so constructed that it could be raised or lowered at will. At the time of the accident this scaffold was suspended about eight or ten feet above the level of the street along which a covered express wagon of the defendant was being driven, the top of which scraped against the bottom of the scaffold causing the planks to fall and occasioning injuries to the plaintiffs for which they recovered damages in the District Court.

In submitting the case to the jury the trial court instructed them that "when this driver drove through the street it was his duty to drive in such a manner as not to injure men in the position in which they (the plaintiffs) were," and refused to charge the defendant's second request, which was that the owner of the wagon had a right to presume that the street was free from a scaffold suspended from the elevated structure.

For the appellant, *McDermott & Enright.*

For the respondent, *Harlan Besson.*

The opinion of the court was delivered by

GARRISON, J. The instruction that it was the duty of the driver to drive in such a manner as not to injure the plaintiffs was clearly erroneous; his duty was to use reasonable care. The uncontroverted fact being that the driver had not so driven as to avoid injury to the plaintiffs, the instruction was, in effect, a direction of a verdict for the plaintiffs, which was palpably erroneous.

There is, however, a more fundamental error that runs through the case and is presented by the refusal of the District Court to charge the defendant's second request, viz., that the driver of the wagon had the right to presume that the street was free from a scaffold suspended from the elevated structure. This request embodied a proper statement of the law and ought to have been charged as correctly presenting the legal aspect of the case if the driver of the wagon did not see the scaffold or know of its existence, which the jury must have found to be the fact if they accepted the statement of the driver, who testified that he did not see the scaffold because he was looking at his horses, and that he did not look up because he was looking where he was going. If, notwithstanding the driver's denial that he saw the scaffold, the jury had found that he did see it, a logical and perhaps a legal basis of negligence would have been laid; but that question was not submitted to the jury; what was left to the jury was the failure of the driver to look for the scaffold, which admitted fact was treated both in the trial court and in the Supreme Court as being a negligent act. This assumes that it was the duty of the driver to look out, or rather to look up, for such an obstruction to travel as this suspended scaffold proved to be. The law, however, imposed no such duty upon the driver, who, as correctly stated in the request, has the right to presume that the street was free from a temporary obstruction in so unusual a place. Of course, if the driver saw the obstruction or had knowledge of its existence, it was his duty to use reasonable care to avoid it, but if he did not see it or know of it, he was under no duty to look for something that he had the right to presume did not exist. The correct rule is that stated by this court in *Durant* v. *Palmer,* 29 *N. J. L.* 544, where, speaking of the public highway, it was said: "The traveling public have a right to suppose that there is no dangerous impediment or pitfall in any part of it without a light placed to give warning of it or a suitable railing to protect from it." This was said of an open area in the surface of the highway, but the rule thus laid

down applies to all interferences with the safety of travel on a highway arising from those temporary uses of it that are unusual in the sense that they are not the normal and permanent incidents of a highway. Permanent encroachments upon the highway, such as front door steps, hitching posts, awning poles and this elevated railroad structure itself, are incidents of the highway of which the traveling public must take notice; but merely temporary obstructions to travel, such as an open area or coal chute, the piling up of building materials, a lowered arc light or a sign or awning suspended so low as to impede travel, are matters as to which, in the absence of knowledge or of actual warning, the presumption is that no such obstructions to travel will be encountered. Such a presumption is essential to the protection of the public, especially in congested centres of traffic and travel where rapidly-moving cars and motors are to be encountered and, if possible, avoided, to say nothing of the safe-guarding of slower-moving vehicles and pedestrians. These normal incidents of surface travel suffice to tax the skill of a driver whose whole attention can be given to what is within his field of vision without adding to his duties that of making continuous investigations as to what is taking place over his head or what has taken place above the ordinary parallel of vision, since to a mathematical certainty his ability to give attention to what is before him will be diminished in exact ratio to the attention he gives to the making of such aerial observations. The basis of this salutary rule is the presumption that obtains in the cases to which it applies, which was correctly stated in the defendant's request and ought to have been charged.

For the errors that have been pointed out the judgment of the Supreme Court is reversed, to the end that there may be a *venire de novo* in the District Court.

*For affirmance*—None.

*For reversal*—The Chancellor, Chief Justice, Garrison, Parker, Minturn, Kalisch, Black, Bogert, Vredenburgh, Heppenheimer, Williams, JJ. 11.