22 N.J. Super. 253 (1952)
91 A.2d 868
CATHERINE A. McMANUS, ADMINISTRATRIX OF THE ESTATE OF FRANK B. McMANUS, DECEASED, PLAINTIFF-RESPONDENT,
v.
NEW JERSEY WATER COMPANY, A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 6, 1952.
Decided October 27, 1952.
*256 Before Judges EASTWOOD, GOLDMANN and FRANCIS.
Mr. Carl Kisselman argued the cause for plaintiff-respondent (Mr. Bruce A. Wallace, attorney).
Mr. William S. Zink argued the cause for defendant-appellant (Messrs. Bleakly, Stockwell & Zink, attorneys).
The opinion of the court was delivered by FRANCIS, J.C.C. (temporarily assigned).
Respondent was awarded a verdict of $28,500 for the death of her husband, which the jury found had been caused by appellant's tortious conduct. Reduction to $25,000 was ordered because that sum was the limit sought by the ad damnum clause of the complaint. An additional motion seeking further decrease on the ground of excessiveness was denied. The appeal now presented charges that the trial court should have granted the motion for dismissal and that the verdict is contrary to the weight of the evidence and excessive.
The mishap out of which this action arose is an unusual one. The proof thereof and of the causal relation between it and decedent's death was largely circumstantial in character.
The incident took place on December 13, 1950 in the early hours of the morning at the southwest corner of Nicholson Road and Wyoming Avenue, in Audubon, New Jersey. Nicholson Road runs east and west; Wyoming Avenue runs north and south, intersects Nicholson on the south side thereof and dead-ends there. On the north side of Nicholson Road some distance west of what would be the northwest corner, if Wyoming Avenue continued north beyond the intersection, there was an overhead street light. On the south side of Nicholson Road from its intersection with White Horse Pike, which is two-fifths of a mile to the east, a continuous *257 pedestrian sidewalk had been constructed. This sidewalk continued to the west to and beyond Central Avenue, which is two blocks west of Nicholson Road. On the north side of Nicholson Road from White Horse Pike the pedestrian sidewalk existed only at intervals.
On the south side of Nicholson Road there was a grass plot between the sidewalk and the curb. At the southwest corner of Nicholson Road and Wyoming Avenue the sidewalk on Nicholson Road continued directly to the curb so that it crossed the grass plot on Wyoming Avenue; the walk on Wyoming Avenue did the same, thus crossing the grass plot on Nicholson Road. These sections of sidewalk were called park strips. There was a telephone pole in the grass plot on Wyoming Avenue about two feet from the southerly edge of the more easterly park strip.
The decedent, Frank B. McManus, lived on Central Avenue, his house being on the east side thereof and to the south of Nicholson. At the time of his death he was employed as a salesman in the John Wanamaker Store in Philadelphia. There were two bus routes available to him to get to and from his place of business. One of them necessitated taking and being discharged from the bus at Nicholson Road and White Horse Pike. He took advantage of both routes but used the Nicholson Road-White Horse Pike route more often on the return trip home than he did in the morning. On such occasions he reached home by walking up Nicholson Road. He enjoyed the outdoors and according to his widow was a "very quick walker."
Appellant company had learned of a water leak around the southwest corner of Nicholson Road and Wyoming Avenue and on December 7, 1951 began exploratory excavations in that area. On December 8 two holes were dug in Nicholson Road at the corner and one was filled up. The one remaining was about opposite the east park strip and a few feet to the north. On the same day this east park strip was removed and placed at the curb line in the gutter on the westerly side of Wyoming Avenue. In this position it would be directly *258 in the path of a westbound pedestrian who was crossing Wyoming Avenue and about to step up from the street to the sidewalk at the southwest corner. The removal of the park strip created a depression and an unevenness in the sidewalk, but between the southerly edge of this condition and the telephone pole already referred to the grass strip was untouched for about two feet. Then, also on the same day, appellant's workmen dug an excavation from the curb line on Nicholson Road at the southwest corner extending in a southerly direction into the park strip and partially into the area which had been covered by the removed section of sidewalk. This ditch was four feet, three inches long, paralleling the westerly curb line of Wyoming Avenue, two feet wide, and four feet, eight inches deep, and the leaking pipe was located therein. The fill from these excavations was piled in two large piles, one in Nicholson Road immediately adjacent to and west of the ditch, the other on the Wyoming Avenue park strip and sidewalk of Nicholson Road. The oral testimony and the pictures of the scene show that there was debris scattered generally around the corner and in and about the path of pedestrians crossing Wyoming Avenue on Nicholson Road.
The work continued at this point through December 13 when the accident happened. December 9 and 10 were Saturday and Sunday and nothing was done on those days except the checking of certain bomb flares which had been deposited at the site.
At no time were barriers of any kind posted around the excavations or the depressed area where the park strip was removed; no planks or other covering were placed over them; and there were no signs or warnings of any kind posted anywhere near the scene. The workmen placed four kerosene bomb flares, of a familiar type, at various locations and these remained burning all night. The proof shows that they were burning on the late afternoon of December 12; also that flames from them were seen about 5:30 A.M. of December 13, although the witness did not attempt to ascertain *259 the number that then were burning, and that all of them were burning after the decedent's body was discovered. No affirmative evidence was introduced to establish that they or any of them were out during the night of December 12 or the early morning of the 13th.
One flare was located on top of the pile of dirt on Nicholson Road; the second about at the north corner of the street excavation in Nicholson Road; the third on the sidewalk at the southeasterly edge of the pile of dirt located there; and the fourth on Wyoming Avenue about alongside of the northeasterly corner of the stone slab which had been deposited in the gutter.
Between 2:30 and 2:45 on the morning of December 13 the decedent was seen to alight from a bus on the Camden side of the intersection of White Horse Pike and Nicholson Road. No one saw him after that until at about 7:30 A.M.; his body was found head down in the excavation in the park strip at the northwest corner of Nicholson Road and Wyoming Avenue.
Autopsy showed that death was due to a cardiac tamponade produced by the rupture of a vein in the anterior portion of the right atrium of the heart. And medical evidence was offered to the effect that the fall into the ditch caused the rupture.
The only external signs of injury were an abrasion on the shin of each leg. All of decedent's organs were normal and there is no proof in the record of alcohol in his stomach or brain. According to his widow he had been in good health and had suffered from no serious illness of any kind. And the assistant county physician who performed the autopsy declared on the basis of the appearance of the leg abrasions that McManus was alive when he fell into the hole.
On these proofs appellant contends that the trial court should have granted the motion for judgment in its favor.
The action was based upon charges of negligence and nuisance. As to both of these causes clearly a jury question *260 was made out. One who creates a temporary obstruction or excavation in a public sidewalk or a public highway, or so close thereto as to constitute a hazard to the traveling public, is under the duty of giving warning or notice of the presence of such obstruction or excavation. Failure to use reasonable care in the giving of warning or notice thereof renders such person answerable to a user of the public way who receives injury as the direct and proximate result of the obstruction or excavation. Hedges v. Housing Authority, 21 N.J. Super. 167 (App. Div. 1952); Reilly v. B.S. Janney, Jr., & Co., 103 N.J.L. 11 (Sup. Ct. 1926); Sutphen v. V.J. Hedden & Sons, 67 N.J.L. 324 (E. & A. 1902); Fox v. Wharton, 64 N.J.L. 453 (Sup. Ct. 1900); Thomas v. Consolidated Traction Co., 62 N.J.L. 36 (Sup. Ct. 1898); Daneck v. Pennsylvania R.R. Co., 59 N.J.L. 415 (E. & A. 1896); Restatement-Torts, sec. 368.
While the water company's workmen placed lighted flares in the area in the manner described, the adequacy of them in the discharge of its duty under the circumstances presented was certainly a matter upon which the minds of reasonable men might differ. This is particularly so in the light of the testimony that accepted and standard practice required barriers and planking. In fact, although appellant's superintendent, who was in charge of this operation, would not admit that these additional precautionary measures were customary practice, he conceded that they were "possibly good practice." As the Court of Errors and Appeals said in Sutphen v. Hedden, supra:
"Doubtless in many instances a warning by a light or other signal at the point of danger would fill the requirement of duty, while in others, particularly where a concurring cause contributes to the accident, an enclosure or barrier would become necessary. And of course, whether in a given case the one or the other method of guarding against danger would be a sufficient compliance with the required duty is a question for the jury."
Basically appellant's position is that the proof is deficient in the matter of demonstrating that its delinquency *261 was the proximate cause of decedent's presence in the excavation. The argument is that since there was no eye-witness evidence to the claimed fall of McManus into the excavation, a jury should not have been permitted to speculate as to whether a causal relation existed between the failure to guard the excavation properly and his presence therein. It is said that no one knows how he got in the ditch; he may have jumped in, or been thrown in, or died of a heart attack coincidentally with his passing the ditch and fallen in. Obviously ocular evidence of a fall and of the circumstances under which it occurred is not essential. The fall and the causal relation between it and the failure to guard properly may be shown by circumstances pointing to a reasonably probable relation between the two. "All that is required is that the circumstances should be so strong that a jury might properly, on grounds of probability, rather than of certainty, exclude the inference favorable to the defendant." Austin v. Pennsylvania R.R. Co., 82 N.J.L. 416 (E. & A. 1911); Suburban Electric Co. v. Nugent, 58 N.J.L. 658 (E. & A. 1896). The former Court of Errors and Appeals declared that circumstantial evidence often leads to a more satisfactory conclusion than direct evidence can produce and that:
"Circumstantial evidence is of two kinds, namely, certain, or that from which the conclusion in question necessarily follows; and uncertain, or that from which the conclusion does not necessarily follow but is probable only, and is obtained by a process of reasoning. In civil cases, * * * it is not necessary that the minds of the jurors be freed from all doubt; it is their duty to decide in favor of the party on whose side the weight of the evidence proponderates, and according to the reasonable probability of truth." (Jackson v. Delaware, Lackawanna and Western R.R. Co., 111 N.J.L. 487 (E. & A. 1933)).
The appraisal of the circumstances here must be made with another vital principle in mind. Pedestrians upon a public sidewalk or way are entitled to assume that it is free from temporary obstructions or excavations for its entire width and that there will be no such conditions so close to it as to constitute a hazard. He is not obliged to look for *262 or to anticipate any such conditions. His only duty is to use reasonable care to avoid them, if he sees or is aware of them. Thompson v. Barab, 125 N.J.L. 461 (Sup. Ct. 1940); Christine v. Mutual Grocery Company, 119 N.J.L. 149 (E. & A. 1937); Reilly v. B.S. Janney, Jr., & Co., supra; Matheke v. U.S. Express Company, 86 N.J.L. 586 (E. & A. 1914).
McManus alighted from the bus on the southerly side of Nicholson Road, inferentially on his way home. It is reasonably probable that he walked on the southerly sidewalk because he was familiar with the fact that only on this side was the walk continuous, and because his home was south of Nicholson Road at Central Avenue. As he proceeded west toward the scene of his death, it is important to note that there is no evidence whatsoever that he had used this route or had passed the corner in question at any time while appellant's work was in progress or that he was in any way aware of the existence of excavations.
The excavation inside the southwest curb line, which was at least partly in the park strip, was in the path of a westbound pedestrian crossing Wyoming Avenue. If he did not see it and continued walking so as to step onto the east park strip toward the northerly side thereof he would walk into the excavation. To avoid doing so or to avoid walking on the depression in the remainder of the park strip immediately to the left of the excavation, it would be necessary to turn somewhat to the left and go between the edge of the depression and the telephone pole.
The physical situation created by appellant, particularly by the pile of dirt immediately in back of the excavation, the narrowness of the excavation, only two feet wide, and the location of the two flares, one to the left side of the pile of dirt and on the sidewalk, and the other in the street just to the right of the removed park strip section, certainly presented a condition from which a jury might reasonably find that the excavation was in shadow or not sufficiently illuminated to be observable. It should be noted also from the *263 pictures that the flares produced an exposed flame of not very sizeable proportions, and which undoubtedly flickered with any breeze. And the record is barren of any evidence of the dimensions of the flame or of the extent to which it illuminated the surrounding area. In addition, considering the appearance of the site, the absence of barriers or planking or other warning, it was open to a jury to find that a pedestrian would not expect any excavation in or close to his path.
Under the circumstances the sum of the proof gave rise to an inference, which a jury might well find to be of the proportions of reasonable probability, that the decedent in walking across Wyoming Avenue, intending to continue westwardly on the sidewalk, walked into or fell into the excavation, and further, that he would not have done so had barriers or planking or adequate lights or other warnings been present or if the excavation had not projected into or been so close to the pathway.
No evidence was adduced upon which a charge of McManus' negligence could be predicated (cf. Suburban Electric Co. v. Nugent, supra, p. 661) and the presumption against contributory negligence must be recognized. 16 Am. Jur., Death, sec. 302. He was apparently a healthy man, all his organs were normal according to the autopsy, except the fatally ruptured heart artery; there was nothing in the way of injury of any kind about the head or body to indicate an attack by robbers or other assailant, and nothing to show any alcoholism.
In our judgment on all the facts the question of proximate cause was for jury determination, and its finding for the plaintiff is not contrary to the weight of the evidence. A pertinent statement appears in Hardcastle v. South Yorkshire Ry. Co., 4 Hurlst. & N. 67, 28 L.J. Exch. 139, which is quoted with approval in Daneck v. Pennsylvania Railroad Co., supra:
"`When an excavation is made adjoining a public way, so that a person walking on it might, by making a false step, or being affected with sudden giddiness, or, in the case of a horse or carriage, who *264 might by the sudden starting of a horse, be thrown into the excavation, it is reasonable that the person making such excavation should be liable for the consequences.'"
A case strongly similar to the present one is Vosler v. Delaware L. & W. Railroad Co., 77 N.J.L. 727 (E. & A. 1909). There, the proof showed that in the early evening of the day in question the decedent was in the waiting room of the defendant's station. When the arrival of his train was announced, he started toward the platform of the station through a side door and was never seen again until his dead body was found, between three and four hours afterwards, at the foot of a stairway leading from the platform to a cellar under the waiting room, the apparent cause of death being a broken neck. It appeared that the railroad company had left an opening in the platform for the purpose of a stairway to the cellar. This opening was between five and six feet from the exit of the waiting room. It was unprotected and there was evidence of inadequate lighting. Plaintiff's verdict was sustained, the Court of Errors and Appeals saying:
"We think that a fair jury question was presented whether the defendant was not negligent in having failed to provide sufficient lights to warn passengers of the dangerous opening in a platform which they had been invited to use for the purpose of reaching defendant's trains, and that the trial court would not have been justified in withdrawing that question from the jury.
Another ground urged in support of the motions was that upon the evidence there was no causal connection between the condition shown and the death of the decedent; the contention of the defendant being that the plaintiff must present such a train of circumstances as offer a logical basis for an inference of negligence, and must remove the cause from the realm of speculation, that the mere fact that the decedent was last seen alive in the waiting room and found four hours afterwards dead at the foot of the stairway, `requires a conjecture or guess' that he walked into the stairway because of inefficient lights and guards. The fact that the deceased left the waiting room by the side door, and if he turned along the platform towards the train after leaving the door, walking within three feet of the wall of the station, he would fall into the stairway, is not a *265 conjecture, but on the contrary, a reasonable inference, which is supported by the fact that his dead body was found at the foot of the stairway, a logical sequence of what would be likely to happen under the conditions stated."
Appellant urges that the verdict of $25,000 is excessive. Decedent gave his widow $30 weekly, out of which she bought their food, paid the gas and electric and milk bills, and bought her clothing; occasionally he would give some extra sums for small items. On her birthdays and wedding anniversaries he made gifts of $5 or $10. In addition he provided their home, paid the taxes and upkeep, and bought the coal for heating the house; he chopped wood, cut the grass and hedge, took care of the furnace, and painted the house. Further, decedent was in receipt of a life income of $61.80 a month of which he gave her one-half or $30.90. This income went to a married daughter on his death, but the daughter was making a voluntary gift thereof to the widow because she "needs it."
At death decedent was 62 years of age and his wife 65 years. It was agreed that the average life expectancy of a 62 year old male was 15 years. An actuary testified that a capital sum of $19,313, earning interest at 2 1/2% would produce an income of $30 weekly over a period of 15 years and be exhausted at the end of that time. This was without provision for the payment of income taxes. It appears also that the monthly contribution of $30.90 over the 15-year period would amount to $4,593. (Of course, its present value would be a somewhat lesser sum.) This added to the capital sum mentioned would total $23,906.
Appellant argues that the $30.90 contribution cannot be considered because respondent has been receiving the full $61.80 since her husband's death. However, the $61.80 comes to her by way of gift from the daughter who is now entitled to it and it is given because of respondent's need. It may be withdrawn at any time and a jury might well believe that after their verdict it would be withdrawn. Moreover, there is nothing in the record to show how long the *266 daughter will receive the monthly allowance or that it will be paid to her for the period of her father's normal expectancy.
This court, of course, has the power to set aside the verdict as excessive. However, the power is not exercised unless a verdict is so manifestly excessive as to demonstrate mistake, passion or prejudice. Verdicts in death actions inevitably involve a certain amount of necessary speculation by a jury as to the pecuniary loss suffered by a widow. Here the verdict might have been smaller and yet not be deemed inadequate upon the application of the same test. We think the verdict is high but not excessive in the sense that it bespeaks mistake, passion or prejudice.
Accordingly the judgment is affirmed.